[L.A. No. 29852. In Bank. Sept. 3, 1971.]

JAMES PERRINE, Petitioner, v.
THE MUNICIPAL COURT FOR THE EAST LOS ANGELES
JUDICIAL DISTRICT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Roger Jon Diamond for Petitioner.

John D. Maharg, County Counsel, and Edward H. Gaylord, Assistant County Counsel, for Respondent.

No appearance for Real Party in Interest.

## OPINION

**WRIGHT, C. J.**—Petitioner seeks a writ of prohibition to restrain respondent court from taking further proceedings in criminal actions charging him with violating Los Angeles County Ordinance 5860, section 321[1] which prohibits the operation of a bookstore without first securing a license from the Los Angeles County Public Welfare Commission. ■ Since the ordinance sets no adequate standards for issuing licenses we conclude that it constitutes an invalid prior restraint on the exercise of freedoms guaranteed by the First Amendment and is therefore unconstitutional on its face. ■ We also hold that it is constitutionally impermissible to deny an applicant a license to operate a bookstore solely upon the ground that he has suffered a prior criminal conviction.

The facts are not in dispute. For several years petitioner has been engaged in the business of selling books and magazines in Los Angeles County at various leased locations. On November 28, 1969, Los Angeles County adopted an ordinance requiring that every person operating a bookstore procure a license and pay a license fee of $25. (Los Angeles County Ordinance 5860, §§ 321, 322.)[2] It provides that operating a bookstore without a license is a misdemeanor and that each day's unlicensed operation constitutes a separate offense. (Los Angeles County Ordinance 5860, §§ 7, 13.)[3] Sections 329.2 and 329.4[4] set forth provisions for grant-

---

[1]"Sec. 321 (9897 11-28-69) *Bookstore*. Every person conducting a bookstore the principal business of which is the sale of books or the sale of books and periodicals shall first procure a license and pay a license fee of twenty-five dollars. This section does not apply to the sale of books or periodicals as an incident to some other business or occupation."

[2]See footnote 1, supra, for section 321. "Sec. 322. (9897 11-28-69) *Grant or Denial of Bookstore License*. A license for a bookstore shall be granted or denied as provided in Section 329.4."

[3]"Sec. 7. *Misdemeanor to engage in licensed activity without a license*. Every person who engages in, conducts, manages, or carries on any business or other activity for which a license is required by this ordinance without first having procured a license so to do and having paid the fee if any for such license as in this ordinance provided, is guilty of a misdemeanor.

"Sec. 13. *Violation Punishment*. Any person violating any of the provisions of this ordinance or of any regulation imposed pursuant thereto is guilty of a misdemeanor punishable by a fine of not exceeding five hundred dollars or by imprisonment in the County Jail for a period not exceeding six months, or by both such fine and imprisonment. Each such person is guilty of a separate offense for every day during any portion of which any violation of any of the provisions of this ordinance or of any such regulation is committed, continued or permitted by such person, and shall be punished therefor as provided by this ordinance."

[4]"Sec. 329.2 (9557 5-31-68) *Exhibition—Hearing*. Except as otherwise provided in Section 63, a license required by Section 329 shall not be granted until the Public

ing or denying a license. Petitioner applied for a bookstore license in December 1969. After two continuances the county public welfare commission held a hearing on April 21, 1970, at which time petitioner admitted a 1968 conviction for violation of Penal Code section 311.2 (selling, distributing, or exhibiting obscene matter). At the hearing the Los Angeles County Sheriff urged that section 329.4, subdivision (b)(1)(ii) required that petitioner's application be denied because of his 1968 conviction. The matter was taken under submission, and on May 20, 1970, the commission denied the application without opinion.

Pursuant to Los Angeles County Ordinance 5860, article 9.5, petitioner appealed the commission's decision to the license appeals board, which denied the appeal without opinion on September 21, 1970. While the appeal was pending petitioner was twice arrested and charged with operating a bookstore without a license. Petitioner filed demurrers to the complaints on the ground that the ordinance is unconstitutional. The demurrers were overruled and a trial date set. Petitioner seeks by this peti-

Welfare Commission or its hearing officers holds a public hearing, notice of the time and place of which shall be given to the applicant as required by Section 101."

Section 329.4, made applicable to bookstores by section 322, provides: "(9947 2-20-70) *Granting License.* The Commission may grant a license for an exhibition if, either after a public hearing or pursuant to Section 63 it finds:

"(a) The operation of the exhibition will be carried on at a location and, if in a building or structure, which location, building and structure comply with and meet all of the health, zoning, fire and safety requirements and standards of the laws of the State of California and ordinances of the County of Los Angeles applicable to such business operation.

"(b) The applicant, his employee, agent or any person connected or associated with the applicant as partner, director, officer, stockholder, associate or manager;

"(1) Has not been convicted within the last five years in any court of competent jurisdiction of: (i) Any crime requiring registration under Section 290 of the Penal Code, or ((ii) Any violation of Chapter 7.5 (beginning with Section 311) of Title 9, Part 1 of the Penal Code, or (iii) Any violation of Chapter 7.6 (beginning with Section 313) of Title 9, Part 1 of the Penal Code, or (iv) Any violation of Paragraphs (a), (b), or (d) of Section 647 of the Penal Code, or (v) Any violation of Section 315, or 316, or 318 of the Penal Code, or (vi) Any offense involving the use of force or violence upon the person of another, or (vii) Any offense involving the maintenance of a nuisance in connection with the same or similar business operation.

"(2) Has not committed within the last five years any offense described in subparagraphs (i), (ii), (iii), (iv), (v), or (vi) of Paragraph (1) of this subsection.

"(3) Has not allowed or permitted acts of sexual misconduct to be committed within prior business operations.

"(c) The applicant, his employee, agent or any person connected or associated with the applicant as partner, director, officer, stockholder, associate, or manager, has not knowingly made any false, misleading or fraudulent statement of material fact in the application for a license or in any report or record required to be filed with the Tax Collector or Commission.

"(d) The applicant has not had a similar type of license previously revoked for good cause within one year prior to the application, or if he has, he also has shown material changes in circumstances since such revocation."

tion for writ of prohibition to restrain respondent court from proceeding with the trials.[5]

Petitioner challenges the validity of the county ordinance on several grounds. His principal contentions are (1) that the absence of objective and definite standards for the issuance of a license renders the ordinance unconstitutional on its face; (2) that the ordinance improperly conditions the issuance of bookstore licenses upon qualifications that have no reasonable relationship to the occupation of selling books; and (3) that in any event it is constitutionally impermissible to prohibit a person from selling books solely on the basis of a past criminal conviction or convictions. Since there is merit in these contentions we find it unnecessary to consider petitioner's other contentions.

■ Although the activity of selling or distributing books is not exempt from reasonable regulation, it is entitled to First Amendment protection (*Smith* v. *California* (1959) 361 U.S. 147, 150 [4 L.Ed.2d 205, 209, 80 S.Ct. 215]; see *Near* v. *Minnesota* (1930) 283 U.S. 697, 720 [75 L.Ed. 1357, 1369, 51 S.Ct. 625]; *Burton* v. *Municipal Court* (1968) 68 Cal.2d 684, 689 [68 Cal.Rptr. 721, 441 P.2d 281]). ■ Statutes which authorize public officials to license conduct protected by the First Amendment must set forth definite, objective guidelines for the issuance of such licenses. (*Staub* v. *City of Baxley* (1958) 355 U.S. 313, 321 [2 L.Ed.2d 302, 310, 78 S.Ct. 277]; *Schneider* v. *State* (1938) 308 U.S. 147, 162 [84 L.Ed. 155, 165, 60 S.Ct. 146]; *Hague* v. *C.I.O.* (1939) 307 U.S. 496, 516 [83 L.Ed. 1423, 1437, 59 S.Ct. 954]; *Interstate Circuit, Inc.* v. *City of Dallas* (1968) 390 U.S. 676, 682 [20 L.Ed.2d 225, 230, 88 S.Ct. 1298]; *Thornhill* v. *Alabama* (1940) 310 U.S. 88, 97-98 [84 L.Ed. 1093, 1099-1100, 60 S.Ct. 736]; *Burton* v. *Municipal Court, supra,* 68 Cal.2d 684, 689.) Accordingly statutes which have empowered public officials to exercise their discretionary authority with respect to First Amendment activities in light of the applicant's "good character" (*Schneider* v. *State, supra,* 308 U.S. 147, 158 [84 L.Ed. 155, 163]; *In re Porterfield* (1946) 28 Cal.2d 91, 111 [168 P.2d 706, 167 A.L.R. 675]), the anticipated effect of his conduct upon the "public welfare or morals" (*Staub* v. *City of Baxley, supra,* 355 U.S. 313, 315 [2 L.Ed.2d 302, 307]; *Shuttlesworth* v. *Birmingham* (1969) 394 U.S. 147, 151 [22 L.Ed.2d 162, 167, 89 S.Ct. 935]) and the "sacrilegious" or "cruel, obscene, indecent or immoral" nature of the subject matter to be distributed (*Joseph Burstyn, Inc.* v. *Wilson* (1952) 343 U.S. 495, 506 [96 L.Ed. 1098, 1108, 72 S.Ct. 777]; *Holmby Productions, Inc.* v. *Vaughn* (1955) 350 U.S. 870 [100 L.Ed. 770, 76 S.Ct. 117])

---

[5]Petitioner has standing to challenge the constitutionality of the ordinance even though he has not been convicted of violating it. (*Burton* v. *Municipal Court* (1968) 68 Cal.2d 684, 688 [68 Cal.Rptr. 721, 441 P.2d 281].)

have been held to be unconstitutionally vague and overbroad. ■ The danger of censorship and arbitrary suppression inherent in the employment of such imprecise standards is so great that the voiding of these regulations is required even in the absence of proof of actual discrimination (*Burton* v. *Municipal Court, supra,* 68 Cal.2d 684, 696; *Interstate Circuit, Inc.* v. *City of Dallas, supra,* 390 U.S. 676, 689-690 [20 L.Ed.2d 225, 234-235]).
■ Since statutes which accord officials excessive discretion are unconstitutional on their face, a fortiori, those which vest unlimited discretionary power to issue or deny permits to engage in First Amendment activities are unconstitutional. (*Kunz* v. *New York* (1951) 340 U.S. 290 [95 L.Ed. 280, 71 S.Ct. 312]; *Lovell* v. *Griffin* (1938) 303 U.S. 444 [82 L.Ed. 949, 58 S.Ct. 666].)

The Los Angeles County bookstore licensing ordinance fails to provide the necessary safeguards as it sets *no* standards governing the issuance of a license. By its terms section 329.4 provides that the commission *may* grant a license if it finds that none of the disqualifying factors exist.[6] Thus there is "no guarantee that a permit will issue even if the application meets all of the . . . conditions of the section" (*Dillon* v. *Municipal Court,* 4 Cal.3d 860, 870 [94 Cal.Rptr. 777, 484 P.2d 945]). The county insists that the ordinance does not confer such discretion upon the commission and that it must grant a license if the conditions are satisfied. Not only is such a construction inconsistent with past judicial interpretation (*Dillon* v. *Municipal Court, supra,* at pp. 870-871) and with accepted definitions,[7] it flies in the face of section 29 of the ordinance which clearly defines "may" as permissive and "shall" as mandatory.[8] The only reasonable conclusion is that the ordinance as written confers on the public welfare commission virtually unlimited authority to deny any application for a bookstore license. No other reading of the provisions of the ordinance is intellectually supportable.

The county contends that the language of section 329.4 that "the Commission may grant [a license] if . . . it finds" that none of the disqualifying factors exist clearly implies that it must deny a license unless it can make such a finding. Accordingly, it concludes that as to persons who are disqualified, the commission has no discretion and that therefore the ordinance is valid insofar as it prohibits granting licenses to such persons. As so interpreted, however, the ordinance would nevertheless leave vast dis-

[6]Section 329.4 provides: "*Granting License.* The Commission may grant a license for an exhibition if . . ."

[7]Webster's New Twentieth Century Dictionary (2d ed.): "may, v.: might, . . . contingency, as in clause of purpose, result, concession, or condition; . . ."

[8]"Sec. 29. '*Shall*' and '*May*'. 'Shall' is mandatory and 'May' is permissive."

cretion to the commission. The ordinance does not define what showing the commission could demand that the applicant satisfied the host of qualifications set forth in section 329.4. Its application is therefore fraught with dangers of invidious discrimination. Moreover, many of the subdivisions of section 329.4 are themselves fatally vague. Subdivisions (b) and (c) do not define who may be deemed an "associate" of the applicant whose conduct may disqualify the applicant. Subdivision (b) (3) does not define what constitutes "acts of sexual misconduct," and is therefore unconstitutionally vague. (See, e.g., *Interstate Circuit, Inc.* v. *City of Dallas, supra,* 390 U.S. 676, 688-690 [20 L.Ed.2d 225, 234-235] ["sexual promiscuity"]; *Holmby Productions, Inc.* v. *Vaughn* (1955) 350 U.S. 870 [100 L. Ed. 770, 76 S.Ct. 117] ["indecent, immoral"]; *Commercial Pictures Corp.* v. *Regents* (1954) 346 U.S. 587 [98 L.Ed. 329, 74 S.Ct. 286] ["cruel, obscene"].) Finally, the commission is not limited to denying a license on the basis of a conviction of any of the enumerated crimes, but must determine whether the applicant or any of his associates have committed any of those crimes, a determination that may be fraught with uncertainty, particularly in the area of crimes involving obscenity.

Moreover, we believe that even if the ordinance limited its disqualification to applicants who had either been convicted of one or more of the enumerated crimes or whose adequately defined coparticipants in the proposed business had been so convicted it would nevertheless be invalid.

■ Even in the absence of First Amendment considerations, an ordinance regulating the right to engage in a lawful occupation or business must bear a rational relationship to a valid governmental purpose. (*Skaggs* v. *Oakland* (1936) 6 Cal.2d 222, 224-225 [57 P.2d 478]; *Laurel Hill Cemetery* v. *City of San Francisco* (1907) 152 Cal. 464, 470 [93 P. 70], affd. 216 U.S. 358 [54 L.Ed. 515, 30 S.Ct. 301].) ■ Accordingly, standards for excluding persons from engaging in such commercial activities must bear some reasonable relation to their qualifications to engage in those activities. (*Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 234-235 [82 Cal.Rptr. 175, 461 P.2d 375].) In the present case we perceive no reasonable relation between the qualifications of an applicant to operate a bookstore and any past conviction of any of the vast number of crimes listed in section 329.4 he or any of his coparticipants may have suffered.

Participants in the business of selling books require no special expertise. They are not like doctors or lawyers or school teachers whose past criminal convictions are often directly related to their occupational qualifications and may therefore be reasonably invoked to bar them from practicing their professions. (See, *Werner* v. *State Bar* (1944) 24 Cal.2d 611 [150 P.2d 892]; *Bruns* v. *State Bar* (1941) 18 Cal.2d 667 [117 P.2d 327]; *Hallinan*

v. *Committee of Bar Examiners* (1966) 65 Cal.2d 447, 471-472 [55 Cal. Rptr. 228, 421 P.2d 76].) The ordinance in this case appears to be primarily concerned with persons who have been convicted of sex crimes or crimes of violence against the person, including the most trivial assaults and batteries. No showing has been made that such persons are in any way disqualified to participate in the operation of a bookstore or likely to abuse the right to do so to promote any criminal propensities that they may still possess. Sex crimes are not ordinarily committed in bookstores, and crimes of violence are much more likely to be committed against bookstorekeepers than by them in their shops. The ordinance's broad exclusion for past criminal convictions goes far beyond any constitutionally permitted restriction on the right to engage in a lawful occupation or business.[9]

It is contended, however, that at least as to crimes involving obscenity, there is a reasonable relationship between conviction of such crimes and the operation of a bookstore.[10] Accordingly, it is urged that the commission lawfully denied petitioner's application for a license on the basis of his conviction for violating Penal Code section 311.2. This contention cannot stand in the face of the First Amendment. ■ Since in a host of other contexts the ordinance directly and unconstitutionally restricts the right to engage in activities protected by the First Amendment, we cannot sustain its application to petitioner even though a narrowly drawn ordinance might constitutionally permit denying his application. (*Burton* v. *Municipal Court, supra,* 68 Cal.2d 684, 696; *Thornhill* v. *Alabama, supra,* 310 U.S. 88, 97-98.) ■ Moreover, since a denial of a license would prohibit petitioner from engaging in an activity protected by the First Amendment, it could only be justified, even under a narrowly drawn ordinance, if permitting a person who had been convicted of a crime involving obscenity to operate a bookstore constituted a clear and present danger of a serious, substantive evil. (*Wirta* v. *Alameda-Contra Costa Transit District* (1968) 68 Cal.2d 51, 60 [64 Cal.Rptr. 430, 434 P.2d 982]; *Thomas* v. *Collins* (1943) 323 U.S. 516, 530 [89 L.Ed. 430, 440, 65 S.Ct. 315]; *Board of Education* v. *Barnette*

---

[9] In reaching this decision we intend to cast no doubt on the right of a legislative body to enact under the police power reasonable regulations, including the licensing of bookstores, which are specifically drawn to meet proper public purposes such as compliance with health, fire, and safety laws.

[10] The county is, however, somewhat inconsistent in its claims. It assures us that the ordinance is not designed to and "in no way regulates the contents of the books themselves." Yet it also makes the highly questionable and factually unsupported claim that a "person who has been convicted of selling or distributing obscene matter is less likely to comply with § 311.2 of the Penal Code than a person who has not violated that section."

(1942) 319 U.S. 624, 639 [87 L.Ed. 1629, 1638, 63 S.Ct. 1178, 147 A.L.R. 674].) No such. clear and present danger appears. We cannot assume that because petitioner was once convicted of violating Penal Code section 311.2, he will violate it again, or that if he does so, criminal sanctions will not afford an adequate remedy. (See, *Near* v. *Minnesota*, *supra*, 283 U.S. 697, 715 [75 L.Ed. 1357, 1367].) Appropriate to the facts of the present case are the comments of the United States Supreme Court in *Bantam Books, Inc.* v. *Sullivan* (1962) 372 U.S. 58, 66, 69-70 [9 L.Ed.2d 584, 590, 592-593, 83 S.Ct. 631], made with reference to a Rhode Island commission established, not to prohibit the distribution or sale of literature, but merely to notify publishers of material it deemed to be objectionable and to recommend prosecution: "[T]he Fourteenth Amendment requires that regulation by the States of obscenity conform to procedures that will ensure against the curtailment of constitutionally protected expression, which is often separated from obscenity only by a dim and uncertain line. . . . The Commission's operation is a form of effective state regulation superimposed upon the State's criminal regulation of obscenity. . . . In thus obviating the need to employ criminal sanctions, the State has at the same time eliminated the safeguards of the criminal process. . . . The Commission's practice is in striking contrast, in that it provides no safeguards whatever against the suppression of the nonobscene, and therefore constitutionally protected matter. It is a form of regulation that creates hazards to protected freedoms markedly greater than those that attend reliance upon the criminal law."

To interpret the ordinance in this case to permit denial of a license because of a past conviction of violating Penal Code section 311.2 would do more than create a hazard to protected freedoms; it would suppress them altogether. The penalty for violating section 311.2 does not include a forfeiture of First Amendment rights, and the risk that criminal sanctions will be insufficient to deter future violations of that section cannot justify the county's attempted forfeiture of those rights on the theory that past violators are unfit to operate bookstores.

Since the licensing ordinance is unconstitutional on its face, respondent court lacks jurisdiction of the criminal proceedings against petitioner.

Let a peremptory writ of prohibition issue as prayed.

Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

**BURKE, J.**—I dissent. I agree with the majority's determination that the ordinance in question lacked sufficient standards to guide the commission's discretion in granting or denying a license in those cases wherein

none of the enumerated disqualifying factors (e.g., prior conviction of obscenity offense) exists. In the instant case, however, Perrine had been convicted of a prior obscenity offense and accordingly the commission had no discretion to exercise but was required by the ordinance to deny him a license. Thus, as applied to Perrine, the ordinance was not void for lack of standards.[1]

The majority also hold that a municipality is without authority to deny a bookstore license to one previously convicted of certain crimes, including the distribution of obscene materials. It seems evident to me, however, that such authority derives from the general police power to preserve, promote and protect the public health, safety, morals and general welfare.

In his own words, James Perrine "learned the business of selling adult material" while working in and operating a San Francisco bookstore and motion picture arcade; subsequently, he acquired his own bookstore, "The Citadel" in Los Angeles. On July 11, 1969, Perrine was convicted for distributing obscene material (Pen. Code, § 311.2). Following the adoption of the ordinance in question, he applied for a license to operate The Citadel and another bookstore, The Arena, also in Los Angeles. He also sought a license for a picture arcade at The Citadel.

The majority confidently state that "We cannot assume that because petitioner was once convicted of violating Penal Code section 311.2, he will violate it again . . . ." To the contrary, I think it reasonably likely that he will. An advertisement for The Citadel bookstore, in the August 1970 Los Angeles Telephone Directory (Yellow Pages), page 352, openly announces: "Erotic Action—Underground Literature—Adults Only . . . Paperbacks, Magazines, Stag Films. . . ."[2] But even without considering the foregoing evidence, the commission properly denied Perrine a license to operate a bookstore.

The rule is clear that a municipality may impose reasonable restrictions upon the conduct of an economic enterprise, including the requirement

---

[1] Our opinion in *Burton* v. *Municipal Court,* 68 Cal.2d 684 [68 Cal.Rptr. 721, 441 P.2d 281], would not preclude us from upholding at least that portion of the ordinance which applied to persons, such as Perrine, who had previously been convicted of an obscenity offense. In *Burton,* we noted that an ordinance failing to meet the required criteria is unenforceable "even though the defendant's conduct may have run afoul of a statute *which could have been adopted* in satisfaction of those criteria." (Italics added; p. 696.) In the instant case, the ordinance *did* contain a properly objective standard for denying a license (prior obscenity conviction); moreover, the ordinance contained a broad severability clause. Therefore, since the evidence is uncontradicted that the commission in fact denied Perrine a license for the sole reason of his prior offense, the ordinance was valid as applied to him.

[2] We may take judicial notice of petitioner's advertisement under Evidence Code section 452, subdivision (h).

that a license to operate be obtained. "That First Amendment rights are being utilized on the premises does not exempt a commercial entrepreneur from compliance with reasonable regulations under the police power. The requirement that a license be obtained as a condition of engaging in the . . . business is a reasonable means of assuring compliance with police power regulations." (*Burton* v. *Municipal Court, supra,* 68 Cal.2d 684, 690.) In *Burton,* this court struck down as overly broad an ordinance which permitted the licensing agency to refuse a license to a motion picture exhibitor "who has in the past shown motion pictures *admittedly not obscene* because he has failed to demonstrate to its satisfaction that the pictures he has exhibited are in 'good taste,' because a vocal segment of the community objects to them and because, in the board's unfettered judgment, the operation of the theater, showing films with 'immoral characteristics' is not 'compatible' with a 'better and healthier community.' " (Italics added; p. 695.)

Had the ordinance in *Burton* had more precise standards and had it authorized the agency to refuse to grant or renew a license for an exhibitor previously convicted for showing *obscene* films, the result reached in that case might well have been different. *Burton* expressly recognized the validity of regulations "specifically drawn to meet a proper public purpose, such as compelling the theater building to satisfy health, fire and safety laws, *or requiring the operation of the business to comply with the law in other specific respects* . . . ." (Italics added; p. 696.) Thus, *Burton* does support the position that a failure to comply with state law could constitute a proper ground for denial of a commercial license, whether or not First Amendment rights are thereby affected. Indeed, it has long been held that a municipality may properly deny a business or professional license to one convicted of a crime bearing a reasonable relation to the nature of the operations sought to be licensed, on the theory that such prior offense is evidence of the applicant's unfitness to engage therein. (*Hawker* v. *New York,* 170 U.S. 189 [42 L.Ed. 1002, 18 S.Ct. 573]; *Hollingsworth* v. *Board of Medical Examiners,* 188 Cal.App.2d 172 [10 Cal.Rptr. 343]; see *Morrison* v. *State Board of Education,* 1 Cal.3d 214, 220-230 [82 Cal.Rptr. 175, 461 P.2d 375].)

Promotion of public morality is a legitimate aspect of the police power. (See *Near* v. *Minnesota,* 283 U.S. 697, 707 [75 L.Ed. 1357, 1362, 51 S.Ct. 625]; *Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind,* 67 Cal.2d 536, 548 [63 Cal.Rptr. 21, 432 P.2d 717]; 11 Cal.Jur.2d, Constitutional Law, §§ 159, 168, and cases cited.) The owner-operator of a bookstore is in daily contact with the public, including the impressionable young, and we have recently acknowledged that public distribution

of obscene materials poses sufficient dangers to the public morality to support governmental regulation thereof. (*People* v. *Luros,* 4 Cal.3d 84, 91-93 [92 Cal.Rptr. 833, 480 P.2d 633].) A municipality should not be required to rely exclusively upon the operation and enforcement of state obscenity laws (which have, for a variety of reasons, proven somewhat ineffective in this state) in controlling the distribution of obscene material.[3] A prior conviction of an obscenity offense furnishes a reasonable basis for concluding that an applicant such as Perrine will repeat the offense.[4]

I would deny the writ of prohibition.

McComb, J., concurred.

---

[3]*Near* v. *Minnesota, supra,* 283 U.S. 697, cited by the majority, does not compel a contrary conclusion. In *Near,* the offending ordinance permitted public officials to take legal proceedings against the owner or publisher of a newspaper upon a charge of publishing scandalous and defamatory matter, and to obtain an order suppressing further publication of the newspaper. The ordinance was not restricted to persons *convicted* of obscenity offenses, but extended to persons *charged* with promoting scandal and libel. (See p. 713 [75 L.Ed. p. 1366].) Moreover, the ordinance in *Near* operated as a prior restraint upon the publication of a newspaper; its effect upon the dissemination of ideas was direct and substantial. On the other hand, the instant ordinance does not restrain publication or distribution of any particular book or magazine; it simply denies those persons convicted of certain criminal offenses a license to operate a bookstore.

[4]The majority's statement to the contrary does not, I trust, indicate that they would also invalidate a properly drawn license *revocation* ordinance which provided that a bookstore or other license could be revoked in the event that subsequent obscenity offenses occurred. Such ordinances may ultimately become instrumental in inhibiting the distribution of obscene materials, and yet their rationale (like that underlying the license ordinance herein) must be that conviction of a prior obscenity offense renders the distributor unfit to operate a bookstore, i.e., his conviction affords a reasonable basis for concluding that he will commit further offenses.