[Civ. No. 54725. Second Dist., Div. One. Dec. 11, 1979.]

MICHELL FLORENCE PERLMAN et al.,
Plaintiffs and Respondents, v.
THE MUNICIPAL COURT FOR THE LOS ANGELES
JUDICIAL DISTRICT OF LOS ANGELES COUNTY,
Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Appellant.

COUNSEL

Burt Pines, City Attorney, George C. Eskin, Chief Assistant City Attorney, Ward G. McConnell, Assistant City Attorney, and Rand Schrader, Deputy City Attorney, for Real Party in Interest and Appellant.

Barry A. Fisher, Robert C. Moest, David Grosz and Larry J. Roberts for Plaintiffs and Respondents.

No appearance for Defendant and Respondent.

OPINION

HANSON, J.—The People of the State of California appeal from a judgment of the Los Angeles County Superior Court granting a peremptory writ of prohibition as to a proceeding in municipal court charging Michell Florence Perlman, Sandra Dimock Leavitt, Christina Fowler, Patricia Mary Demperio, Rosalie J. Borthwick and Mirian Briks (hereinafter referred to collectively as defendants) with a violation of Los Angeles Municipal Code section 44.12 (hereinafter referred to as section 44.12) by soliciting contributions.

FACTS

On December 23, 1977, separate criminal complaints were filed charging the six above-named defendants with violation of section 44.12, soliciting charitable contributions without an information card, a misdemeanor. The six defendants, who are members of the Hare Krishna sect, were soliciting contributions at the Los Angeles International Airport.

On January 30, 1978, the six defendants demurred to the respective criminal complaints filed against them. The trial court overruled their demurrers and proceedings for disposition or trial setting were set for March 28, 1978. On February 2, 1978, defendants filed their petition for writ of prohibition in the superior court. The petition was not personally verified by defendants but bore a verification on information and belief made "for the sake of convenience" by their counsel. It was therein alleged that the defendants relied upon the same grounds raised in the municipal court, namely, that the municipal ordinance under which the complaints were brought is unconstitutional on its face because it provides neither (1) narrow and specific standards to protect against the arbitrary exercise of official discretion in issuing licenses for charitable solicitations nor (2) due process procedural safeguards to insure that due process is satisfied by judicial review of administrative action. The various attachments to the petition include uncertified and unsigned copies of the criminal complaints charging defendants.

The superior court granted the alternative writ and order to show cause issued in the matter scheduling hearing for March 7, 1978. On March 3, 1978, the Los Angeles City Attorney demurred on grounds, inter alia, that essential allegations were not pleaded and filed an answer including a general and special denial of all allegations of the petition. On March 6, 1978, the defendants filed a reply. No evidentiary material was introduced at the hearing.

Following hearing in the matter Judge Pacht overruled the People's demurrer to the petition and ruled that section 44.12 is unconstitutional on its face in that it is vague and overbroad insofar as it purports to deal with activity generally protected by the First Amendment to the United States Constitution, citing *Hynes* v. *Mayor of Oradell* (1976) 425 U.S. 610, 612 [48 L.Ed.2d 243, 248-249, 96 S.Ct. 1755], and *Burton* v. *Municipal Court* (1968) 68 Cal.2d 684, 688, 696 [68 Cal.Rptr. 721, 441 P.2d 281]. Accordingly, the petition was granted and a peremptory writ issued. The People have appealed this judgment.

ISSUES

The People on appeal contend (1) that the petition for writ of prohibition was fatally defective in form and its allegations were thus inadequate to support the judgment; and (2) that the charitable solicitation ordinance of the City of Los Angeles (L.A. Mun. Code,

§§ 44.01-44.20 [hereinafter referred to as the charitable solicitation ordinance]) is not unconstitutional because it is neither vague nor overbroad, and it vests no discretion in administrative officials to refuse to issue information cards.

## DISCUSSION

Upon reviewing the constitutional authorities and the relevant provisions of the Los Angeles Municipal Code (hereinafter referred to as the municipal code), we conclude that the charitable solicitation ordinance is neither vague nor overbroad. Neither is the requirement that those who wish to solicit such contributions obtain an information card (which is in essence a permit) an unreasonable exercise of the police power of the city. (*Gospel Army* v. *City of Los Angeles* (1945) 27 Cal.2d 232 [163 P.2d 704].)

■ With respect to the issue first raised by the People we note that the petition for the writ was not properly verified. ■ A writ of prohibition "is issued upon the verified petition of the person beneficially interested." (Code Civ. Proc., § 1103.) The requisites for verifications are set forth in Code of Civil Procedure section 446, which directs that, absent extenuating circumstances, a pleading shall be verified by the party litigant.[1] An attorney may verify a pleading with the following limitations: "[T]he verification may be made by the attorney,...when the party is absent from the county, or from some cause [is] unable to verify the pleading, and in the presence of either of these conditions the verification may be made by the attorney...on information or belief. Or, if the facts are within the knowledge of the attorney..., [he] may verify the pleading without regard to the existence of such conditions...." (*Bittleston Law etc. Agency* v. *Howard* (1916) 172 Cal. 357, 361 [156 P. 515].) When an attorney has verified the pleading as within his own knowledge and also on information and belief but without stating the reason it was not verified by the party, the court may permit the pleading to stand. (*Bittleson Law etc. Agency* v. *Howard, supra,* 172 Cal. at p. 360; *Oak Grove School Dist.,* v. *City Title Ins. Co.* (1963) 217 Cal.App.2d 678, 708 [32 Cal.Rptr. 288].)

---

[1]Code of Civil Procedure section 446 provides, in pertinent part: "Every pleading shall be subscribed by the party *or* his attorney.... [W]here a pleading is verified, it *shall* be by the affidavit of a party, *unless* the parties are absent from the county where the attorney has his office, *or* from some cause [are] unable to verify it, *or* the facts are within the knowledge of his attorney...When the pleading is verified by the attorney,...he shall set forth in the affidavit the reasons why it is not made by one of the

■ In the instant case, the petition for the writ was verified by the attorney on information and belief with the allegation that he did so "for the sake of convenience." The attorney has at no time claimed that the facts are within his own knowledge. The pleading therefore does not qualify as "an affidavit verifying the truth of the matters covered...." (*Star Motor Imports, Inc.* v. *Superior Court* (1979) 88 Cal.App.3d 201, 204 [151 Cal.Rptr. 721].) It contains allegations based on information and belief with an insufficient statement as to why the parties were unable to verify the pleading personally. ■ Assuming that the trial court despite the defect accepts the petition which is verified only on information and belief, it is the petitioner's duty to bring before the appellate court the records and papers used in the trial court "to the extent necessary to understand the proceedings and justify relief." (See 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 139, p. 3913.)

A petition "that...does not even purport to give all the proceedings had in the respondent court, but only such portions of the pleadings, affidavits and proceedings as the petitioner wants to direct our attention to" (*Rose* v. *Superior Court* (1941) 44 Cal.App.2d 599, 601 [112 P.2d 713]) is subject to rejection by the appellate court. In the present case defendants alleged in their petition that they sought a writ on the same grounds advanced in the municipal court where their demurrers were overruled. In order for the superior court to rule on the merits of the case, it should have before it the record and reasons given by the trial court in reaching its decision. Since in this case defendants filed a petition verified only on information and belief, no valid evidence was submitted to the superior court and it was entitled to deny the petition on grounds of its insufficiency.

The question arises whether the procedural defect was waived by the People "by proceeding to trial without proper objection...." (See, e.g., *Ware* v. *Stafford* (1962) 206 Cal.App.2d 232, 237 [24 Cal.Rptr. 153].) The People argue that they did not waive their objection since by demurrer and answer to the petition they pointed out the insufficiency of the allegations due to the failure to supply a proper verification.

parties. [¶].... [¶] When the verification is made by the attorney *for the reason* that the parties are absent from the county where he has his office, *or* from some other cause are unable to verify it,...such attorney's...affidavit shall state that he has read the pleading and that he is informed and believes the matters therein to be true and on that ground alleges that the matters stated therein are true; provided that in such cases the pleadings shall not otherwise be considered as an affidavit or declaration establishing the facts therein alleged." (Italics added.)

■ However, the proper objection where a party fails to verify a pleading is a motion to strike (see, e.g., 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 356, p. 2020, § 862, p. 2466) which may be made only upon timely notice and provides for hearing and extension of time to answer. (Code Civ. Proc., § 435.) Apparently neither the parties nor the court focused upon this defective verification, a matter which could have been cured or resolved by the superior court in the course of the proceedings.

Because defendants may readily cure the procedural defect by amendment (*Ware* v. *Stafford, supra,* 206 Cal.App.2d at p. 237; *Franchise Tax Bd.* v. *Municipal Court* (1975) 45 Cal.App.3d 377, 384 [119 Cal.Rptr. 552]), we are inclined to give them that opportunity. Accordingly, we turn to the substantive issue to guide the superior court on remand.

■ The People contend that the charitable solicitation ordinance (L.A. Mun. Code, § 44.00 et seq.) is constitutional on its face, relying upon the California Supreme Court decision in *Gospel Army* v. *City of Los Angeles, supra,* 27 Cal.2d 232. The defendants, however, argue that that decision is no longer controlling in view of more recent cases scrutinizing First Amendment rights, particularly those relating to due process safeguards and so-called "standardless" licensing statutes.

It is settled beyond dispute that the defendants have standing, on a proper petition, to challenge the constitutionality of the ordinance. "[O]ne who could have obtained a license for the asking may call into question the whole scheme of licensing when he is prosecuted for failure to procure it. . . ." (*Burton* v. *Municipal Court, supra,* 68 Cal.2d 684, 688.) "[S]uch a challenge is directed solely to the language of the enactment and not to its application in the particular case. . . ." (*Dillon* v. *Municipal Court* (1971) 4 Cal.3d 860, 865 [94 Cal.Rptr. 777, 484 P.2d 945].) Defendants attack the charitable solicitation ordinance arguing (1) that regulation of First Amendment activity requires careful judicial scrutiny; (2) that the ordinance does not include due process safeguards mandated by the United States Supreme Court in First Amendment cases; (3) that the language in the ordinance is unconstitutionally vague; and (4) that the financial disclosure provisions of the ordinance constitute an unreasonable burden.

The decisions provide ample guidance in our review of the charitable solicitation ordinance. In this regard the United States Supreme Court,

in a decision striking down a statute found unconstitutional for its over-broad infringement on such solicitation, observed: "The general regulation, in the public interest, of solicitation, which does not involve any religious test and does not unreasonably obstruct or delay the collection of funds, is not open to any constitutional objection, even though the collection be for a religious purpose. Such regulation would not constitute a prohibited previous restraint on the free exercise of religion or interpose an inadmissible obstacle to its exercise." (*Cantwell v. Connecticut* (1938) 310 U.S. 296, 305 [84 L.Ed. 1213, 1218, 60 S.Ct. 900, 128 A.L.R. 1352].) It was further noted: "[W]ithout doubt a State may protect its citizens from fraudulent solicitation by requiring a stranger in the community, before permitting him publicly to solicit funds for any purpose, to establish his identity and his authority to act for the cause he purports to represent...." (*Id.*, at p. 306, fn. omitted. [84 L.Ed. at p. 1219].)

This passage was quoted with approval in the subsequent decision in *Hynes* v. *Mayor of Oradell* (1976) 425 U.S. 610 [48 L.Ed.2d 243, 96 S.Ct. 1755], relied upon by the superior court in the instant case as determinative of the unconstitutional vagueness of the ordinance herein. However, the ordinances are clearly distinguishable. The ordinance found unconstitutional in *Hynes* regulated political and religious canvassing, as well as charitable solicitation, and Hynes was soliciting door to door in his political campaign. Justice Burger, speaking for the majority, noted: "[A] narrowly drawn ordinance, that does not vest in municipal officials the undefined power to determine what messages residents will hear, may serve these important interests without running afoul of the First Amendment." (*Id.*, at p. 617 [48 L.Ed.2d at p. 251].) A careful reading of *Hynes* discloses that, insofar as it is applicable, it supports the charitable solicitation ordinance previously held to be constitutional in *Gospel Army*. ■ The constitutionality of the ordinance is well established by California authority through *Gospel Army* v. *City of Los Angeles, supra,* 27 Cal.2d 232, and the California Supreme Court recent clear statement that charitable solicitations lie within the domain of the police power and are subject to reasonable regulation (*People* v. *Fogelson* (1978) 21 Cal.3d 158 [145 Cal.Rptr. 542, 577 P.2d 677]).

From the cases, we derive the criteria for scrutinizing the challenged ordinance. First, the ordinance to be constitutional must vest no discretion in the licensing official or agency (*Matter of Application of Dart* (1916) 172 Cal. 47 [155 P.63]; *Gospel Army* v. *City of Los Angeles,*

*supra,* 27 Cal.2d 232) unless such discretion is bounded by clear, definite and objective guidelines (*Staub* v. *City of Baxley* (1955) 355 U.S. 313, 321 [2 L.Ed.2d 302, 310, 78 S.Ct. 277]; *Burton* v. *Municipal Court, supra,* 68 Cal.2d 684, 689; *Perrine* v. *Municipal Court,* (1971) 5 Cal.3d 656, 661 [97 Cal.Rptr. 320, 488 P.2d 648]). If such discretion is authorized by the ordinance, it must include sufficient due process safeguards to insure a swift and adequate remedy by appeal. (*Freedman* v. *Maryland* (1965) 380 U.S. 51 [13 L.Ed.2d 649, 85 S.Ct. 734]; *Burton* v. *Municipal Court, supra,* 68 Cal.2d 684, 695.) Finally, where the ordinance requires financial disclosure, such disclosures must be reasonably related to the purpose of the ordinance. (See, e.g., *Buckley* v. *Valeo* (1975) 424 U.S. 1, 60-84 [46 L.Ed.2d 659, 711-725, 96 S.Ct. 612] [upholding disclosure requirements in political activity, a form of First Amendment activity generally more highly protected than religion]; *Parrish* v. *Civil Service Commission* (1967) 66 Cal.2d 260, 271 [57 Cal.Rptr.623, 425 P.2d 223]; *Britt* v. *Superior Court* (1978) 20 Cal.3d 844, 855 [143 Cal.Rptr. 695, EP574 P.2d 766].)

Thus, we reach the threshold question: How much discretion, if any, is vested in the licensing official? Justice Traynor considering the identical ordinance[2] in *Gospel Army* supplied the answer: "[T]he information cards, which are in effect permits to solicit, are issued *automatically* upon the filing of the required information and the payment of the four cents for each card. The department is given no authority to withhold such cards when these requirements are met . . . ." (*Gospel Army* v. *City of Los Angeles, supra,* 27 Cal.2d 232, 238-239, italics added.) Although defendants argue that *Gospel Army* would no longer stand constitutional muster under the rigid scrutiny required in First Amendment cases today, which is more severe than it was in 1945, the numerous First Amendment cases relied on, most recently the decision in *People* v. *Fogelson, supra,* 21 Cal.3d 158, 165, rely upon the *Gospel Army* decision with respect to the issue of the exercise of discretion by the agency.

 "In applying this principle specifically to ordinances requiring the issuance of permits for the exercise of First Amendment rights, this court concluded that such ordinances 'will not offend the Constitution if they regulate only the time, place, manner and duration [of such ex-

---

[2]In oral argument it was contended that amendments made in 1967 had diluted the authority of the holding in *Gospel Army.* It has been shown, however, that the 1967 amendments to the charitable solicitation ordinance existed in 1945 but were incorporated in a separate ordinance. Since these provisions were specifically approved in a footnote at page 240 of *Gospel Army,* the case has lost none of its vigor as precedent.

pression] and if they are fairly administered by officials within the range of narrowly limited discretion. On the other hand, any procedure which allows licensing officials wide or unbounded discretion in granting or denying permits is constitutionally infirm because it permits them to base their determination on the content of the ideas sought to be expressed.' (*Dillon v. Municipal Court, supra,* 4 Cal.3d at pp. 869-870; see also *Dulaney v. Municipal Court, supra,* 11 Cal.3d at p. 84 [112 Cal.Rptr. 777, 520 P.2d1].)

"Numerous regulatory schemes governing the issuance of permits or licenses have been invalidated for failure to provide the licensing officials with the requisite definite, objective guidelines for issuing the licenses. Those measures which have been struck down include a vaguely worded notice ordinance regulating house-to-house canvassing and solicitation (*Hynes v. Mayor of Oradell, supra,* 425 U.S. 610); a vague licensing measure controlling similar solicitations (*Schneider v. State, supra,* 308 U.S. 147); a standardless permit system governing distribution of literature in public (*Lovell v. Griffin, supra,* 303 U.S. at p. 451 [82 L.Ed. at p. 953]); a standardless permit arrangement governing the posting of bills on utility poles (*Dulaney v. Municipal Court, supra,* 11 Cal.3d at p. 80); a standardless license requirement for book store operation (*Perrine v. Municipal Court* (1971) 5 Cal.3d 656, 662 [97 Cal.Rptr. 320, 488 P.2d 648]); a vague permit scheme governing motion picture projection (*Burton v. Municipal Court, supra,* 68 Cal.2d at p. 692); and a standardless permit scheme regulating parades (*Dillon v. Municipal Court, supra,* 4 Cal.3d at p. 870)." (*People v. Fogelson, supra,* 21 Cal.3d 158, 166-167.)

■ Since it is established that no discretion is vested in the licensing official under the charitable solicitation ordinance, and the information cards, once applied for, must issue automatically within 10 days, it is clear that the provisions of this ordinance are distinguishable from the innumerable ordinances which have failed to pass muster on the issue of constitutionality on grounds of either failure to provide due process safeguards or "vagueness." Moreover, since this ordinance is confined to the regulation of charitable solicitations only, specifically exempting "'[s]olicitations made solely for evangelical missionary or religious purposes'..." (*Gospel Army v. City of Los Angeles, supra,* 27 Cal.2d 232, 242), it does not, on its face, sweep under its control activities such as political canvassing which receive more liberal protection under First Amendment principles. Defendants specifically declare they do not raise in this proceeding the question of whether the specific ac-

tivity in which they engaged was religious in character so that it might be excluded from the regulatory scheme which could not, in any event, be determined without an evidentiary showing upon trial. (See *id.,* at p. 250; *People* v. *Fogelson, supra,* 21 Cal.3d 158, 168-169, conc. opn. by Mosk and Clark, JJ.)

Finally, we note that the financial disclosures required by the ordinance were approved in the *Gospel Army* decision, and are reasonable under the standards set forth in *Parrish* v. *Civil Service Commission, supra,* 66 Cal.2d 260, 271. Upon reviewing the ordinance we conclude: (1) The disclosure requirements are reasonably related to the purpose of the regulation—namely, to detect and protect the public from fraudulent solicitations; (2) the value to the public in insuring that their charitable donations will be distributed as indicated on the information cards outweighs the burden of disclosure required of those who intend to solicit; and (3) the minimal requirement of providing information for public disclosure prior to solicitation is not burdensome where the public agency has no discretion to invoke prior restraint. The argument of defendants that criminal and civil statutes for fraud serve the same purpose and render the ordinance provisions unnecessary ignores the ex post facto nature of any such penalty. This regulation, by insuring that each member of the public will receive information at the time of the solicitation, insures the person solicited will have the opportunity to make an educated choice whether or not to contribute. In conclusion, it appears beyond doubt that the charitable solicitation ordinance (L.A. Mun. Code, § 44.00 et seq.) is constitutional on its face.

### DISPOSITION

The order (judgment) is reversed and the writ is remanded to the superior court with leave to defendants to amend to cure the defect in the verification of their petition. The superior court is instructed to thereafter enter judgment in accordance with the views herein expressed.

Lillie, Acting P. J., concurred.

**ROTHMAN, J.**\*—I concur because we are bound to follow the authority of the Supreme Court in *Gospel Army* v. *City of Los Angeles* (1945) 27 Cal.2d 232 [163 P.2d 704].[1] In *Gospel Army,* the Supreme

---

\*Assigned by the Chairperson of the Judicial Council.

[1]An inferior court must accept the law as declared by a court of superior jurisdiction. *Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].

Court found the ordinance at issue herein to be constitutional on its face.[2] Since the rendition of the decision in 1945 by a sharply divided Supreme Court, and even though there have been major developments in the legal principles applicable to protected activity under the First

[2]The record on appeal contains copies of the ordinance as it existed in 1945 and as it exists today. Comparison of the two ordinances reveals that they are identical except for the minor differences in the sections listed below. These differences cannot justify a conclusion that *Gospel Army* is inapplicable because of changes in the ordinance.

| 1945 Ordinance | 1979 Ordinance | Differences |
|---|---|---|
| Section 44.01 | 44.01 | Change in name of endorsing agency in "Promoter" paragraph. |
| Section 44.02 | 44.02 | In subsection (b) a phrase has been added to not permit the Board to publish investigation of misstatements, deceptions and frauds. |
| | | The powers in subsection (c) (d) (e) and (f) have been removed from this section and added to to section 44.03, as subsection (f) (g) (h) and (i) respectively. |
| Section 44.03 | 44.03 | The Powers of the Department have been expanded by the addition of four subsections from section 44.02 (see above.). |
| | | There are a number of changes from "Board" to "Department", and some changes in numbers of cross referenced sections. |
| | | Added subparagraph (j) authorizing the Department to inform the public about charities that expend 1/2 of their proceeds by a Los Angeles based governing board. |
| | | Added subparagraph (k) authorizing the Board to maintain survey of charities in city. |
| Section 44.06 | 44.06 | Some changes from "Board" to "Department." |
| Section 44.09 | 44.09 | Some changes from "Board" to "Department". |

Amendment, *Gospel Army* has never been questioned or overruled, and as recently as *People* v. *Fogelson* (1978) 21 Cal.3d 158, at page 165 [145 Cal.Rptr. 542, 577 P.2d 677], the Supreme Court cited it.[3]

Because the thoughtful lead opinion here has explained that *Gospel Army* is not only binding but correct, I feel obliged to add my view that *Gospel Army* is binding but probably wrongly decided.[4]

In examining the validity of an ordinance ". . . The crucial factor here is our zealous solicitude for rights falling within the protection of the

| 1945 Ordinance | 1979 Ordinance | Differences |
| --- | --- | --- |
| Section 44.13 | 44.13 | The word "Television" added. |
| Section 44.16 | 44.16 | Some changes from "Board" to "Department". |
| Section 44.19 | 44.19 | Some changes from "Board" to "Department". |
| | | Increase in size of Bond in section (3) (a) & (9) (b). |
| | | Increase in fees charged to solicitors and promoters in subsections (4), (9) (d) & 9 (f). |
| | 44.20 | Provisions on endorsement procedures added. These sections were in another part of the Municipal Code in 1945, and were practically identical to the present section. (See *Gospel Army,* fn. at p. 240.) |

[3]*Fogelson* was decided April 26, 1978, and therefore the trial judge did not have the advantage of this citation when he made his decision on April 3, 1978.

[4]Even when it was decided, two Justices felt it was wrong. In Justice Carter's dissent he criticized the majority's view that the collection activities there were not within the religious exemption. He also found that the ordinance was unduly onerous on the would-be charity in the breadth and detail of the information required to get a permit, and the unbridled power over so-called promoters. The effect of its application, he felt, could drive out all but organized institutions, and the ordinance was more than the approved simple regulations of time, place and manner. (27 Cal.2d at pp. 250-276.)

Justice Edmonds' dissent focused on what he felt was the potential for unjust and arbitrary abuse of power in the ordinance, and was especially burdensome on organizations that were perpetually soliciting funds. He also pointed out that the City could interfere with the solicitation by burdensome information on the information card or by publicizing results of its investigations. (27 Cal.2d at pp. 276-287.)

First Amendment. In considering the constitutionality of ordinances in the category of that involved here "'precision of regulation must be the touchstone'"...and the standards set forth therein must be 'susceptible of objective measurement'...Such precision is exacted because the 'threat of sanctions may deter almost as potently as the actual application of sanctions.'...A long line of decisions has held unconstitutional ordinances governing the issuance of licenses to conduct First Amendment activities where administrative officials were granted excessive discretion in determining whether to grant or deny the license." (*Burton v. Municipal Court* (1968) 68 Cal.2d 684, 690-691 [68 Cal.Rptr. 721, 441 P.2d 281].)

In *Burton* the Supreme Court held unconstitutional an ordinance requiring a police permit, which gave the police commission power to refuse where the business was a public nuisance. In examining the issues, which are, of course, different from those presented by the instant ordinance, the court went on to add: "...*A fortiori* an ordinance is unconstitutional if no standards whatever are set forth to circumscribe the discretion of officials in granting or denying licenses. (*Kuntz* v. *New York* (1951) *supra*, 340 U.S. 290; *Saia* v. *New York* (1948) 334 U.S. 558....; *Lovell* v. *Griffin* (1938) *supra*, 303 U.S. 444.)" (68 Cal.2d at pp. 691-692.)

In *People v. Fogelson, supra,* 21 Cal.3d 158, the Supreme Court held unconstitutional a Los Angeles City ordinance requiring a permit to solicit on city property, there the Los Angeles International Airport. The court again set out the applicable rule governing reasonable regulation: "...in the area of First Amendment freedoms, including constitutionally protected forms of solicitation, the touchstone of regulation must be precision—narrowly drawn standards closely related to permissible state interests...." (P. 166.)

One such state interest, the court noted was prevention of fraud, but pointed out that: "'...[A]ny procedure which allows licensing officials wide or unbounded discretion in granting or denying permits is constitutionally infirm because it permits them to base their determination on the content of the ideas sought to be expressed.' (*Dillon* v. *Municipal Court, supra,* 4 Cal.3d at pp. 869-870....)" (21 Cal.3d at p. 166.) In holding the ordinance unconstitutional the court said that it had absolutely no standards to guide licensing officials in exercising their discretion to grant or deny applications, and that it gave officials "un-

bridled power to prohibit constitutionally protected forms of solicitations. 'Since statutes which accord officials excessive discretion are unconstitutional on their face, a fortiori, those which vest unlimited discretionary power to issue or deny permits to engage in First Amendment activities are unconstitutional.' (*Perrine* v. *Municipal Court, supra,* 5 Cal.3d at p. 662). . ." (21 Cal.3d at p. 167.) Finally, the court expressly pointed out that "commercial speech" is not ordinarily protected, unless the sales involve protected literature or speech, or the communication of ideas. (21 Cal.3d at p. 165.)

Turning to the ordinance here in question, section 44.19 details the regulations on licensing of promoters (anyone who solicits "for pecuniary compensation or consideration"). The Supreme Court in *Gospel Army* found these regulations to be valid even though they allow absolute discretion to refuse a promoter a license if the department is not satisfied as to the good character, reputation and financial responsibility of the promoter. The Supreme Court said that officials had "no discretion to withhold a license if the applicant's good character and reputation and his financial responsibility are established. . . ." (P. 249.) In my view this analysis would not stand scrutiny today. (See *Hynes* v. *Mayor of Oradell,* 425 U.S. 610, fn. at p. 613 [48 L.Ed.2d 243, 249, 96 S.Ct. 1755]; see also *Schneider* v. *New Jersey,* 308 U.S. 147, 164 [84 L.Ed. 155, 166, 60 S.Ct. 146].)

*Gospel Army* also drew a sharp distinction between charitable solicitations, which might be less protected, and religious solicitations. (See 27 Cal.2d at p. 250.) As already noted, it is now beyond question that even commercial activities are entitled to the benefit of the First Amendment where the enterprise is engaged in protected activities.

The lead opinion herein points out that the ordinance is confined to "charitable solicitations only" and exempts "solicitations made solely for evangelical, missionary or religious purposes." (§ 44.16.) They find that this means that the ordinance "does not, on its face, sweep under its control activities such as political canvassing which receive more liberal protection under First Amendment principles." This is, I think, an incorrect reading of the ordinance, which defines "charitable" as including "the words philanthropic, social service, benevolent, patriotic, either actual or purported." (§ 44.01.) Thus, by the plain language protected free speech and expression are swept under its control. The fact that the particular defendants in this case are not claiming a religious

exemption, or alleging that they were actually engaged in the dissemi-
nation of ideas, is insignificant since our focus is on the facial validity
of the ordinance, not its application. If the ordinance on its face sweeps
in protected expression and it is not narrowly drawn so as to avoid un-
bridled exercise of official power, it is unconstitutional. (*People* v.
*Fogelson, supra,* at p. 163.) Even individuals who annoy airport patrons
for money are entitled to the Constitution's protection from such an
ordinance.[5]

The lead opinion finds that this city ordinance vests no discretion in
the licensing officials: "the Information Cards, once applied for, must
issue automatically within ten days." This statement is based on one in
*Gospel Army* where the Supreme Court explained the information
cards under Section 44.03: "...The information cards, which are in ef-
fect permits to solicit, are issued automatically upon the filing of the
required information and the payment of the four cents for each card.
The department is given no authority to withhold such cards when these
requirements are met, and we cannot assume that it will abuse its au-
thority in order to withhold them...." (Pp. 238-239.) The Supreme
Court cited a number of California cases to the effect that no presump-
tion exists that officials will oppress people, and that if officials acted
whimsically and arbitrarily, the applicant could take "'recourse to the
courts for relief from such unjust and arbitrary action.'" (P. 239.)

This proposition was questionable when made. The dissent in *Gospel
Army* pointed out that the United States Supreme Court had held that
availability of judicial relief did not save an otherwise unconstitutional
prior restraint. (27 Cal.2d at p. 280.) (See *Cantwell* v. *Connecticut,* 310
U.S. 296, 306 [84 L.Ed. 1213, 1219, 60 S.Ct. 900, 128 A.L.R. 1352].)
But, more importantly, the assertion as to this meaning of the ordinance
is unsupported by anything in it, and appears to rest on the dubious pre-
sumption (or perhaps wishful thinking) that officials will not act
arbitrarily. Section 44.03 itself does not mandate that cards issue "auto-
matically," it merely vests in the department of social service the
power: "To issue to all solicitors Information Cards" containing certain
details listed therein. (Subd. (d).) Nothing in the ordinance mandates

---

[5]Justice Carter made this point thusly in his dissent: "That some fraud may escape
detection is to be anticipated. This is more or less true in all walks of life despite vol-
umes of protective legislation. But the diversion to wrongful channels of some part of
the public contribution to charity is not a major catastrophe when weighed against the
cost of protection effected only by carving a large slice from the bill of rights." (*Gospel
Army, supra,* p. 253.)

that the information cards be issued within any set time following the filing of a notice of intention to solicit contributions. All the ordinance says is that "at least ten (10) days prior to the beginning of such solicitation" the notice of intention must be filed. Yet no solicitation can take place without first filing this notice of intention (§ 44.05), and without securing an information card (§ 44.12).

A similar vagueness exists in the area of the department's power to recall information cards. When it receives additional information which "in the opinion of the Department, shall render incorrect any statement" on the information card, section 44.03, subdivision (h), authorizes the department to "recall every such Information Card and amend or correct the same or issue in lieu thereof a new Information Card amended or corrected in accordance with such additional information." Under such an order the solicitor is obliged to return the recalled information card within 48 hours of receipt of the notice. There is nothing in the ordinance that specifies how long the department can wait to reissue an information card after it has been recalled for additions or corrections, nor is there a procedure to contest the department's "opinion." This statutory scheme of unrestricted discretion does not, on its face, appear to be a regulation "with narrow specificity." (*N.A.A.C.P.* v. *Button* (1963) 371 U.S. 415, 433 [9 L.Ed.2d 405, 418, 83 S.Ct. 328]; see *Hynes* v. *Mayor of Oradell, supra,* 425 U.S. 610, 620 [48 L.Ed.2d 243, 252-253].)

It should also be noted that *Gospel Army* premised its statement that the department had no authority to withhold the cards on the condition precedent that the "required information" was filed with the department. Thus, under *Gospel Army's* interpretation of the ordinance, the department is given absolute discretion to decide whether the "required information" has been filed, and there exists no procedure for review of that or any other decision of the department or board. Since some official can exercise these powers with no controls, the constitutional prerequisite of narrow specificity is missing.

This sort of failing was the basis upon which the ordinance in *Intern. Soc. for Krishna Consc.* v. *Rochford (7th Cir. 1978),* 585 F.2d 263, 271-273, was held unconstitutional. It was argued that the regulation granted no discretion to issue the license, and that therefore no procedural safeguards were needed. The court said that: "...When the regulations are read as a whole, we find that the possibility of denial of

registration exists. It therefore follows that some mode of review must be included. ...If a regulation has the potential to impinge upon First Amendment rights, that regulation must provide for procedural due process...." (Pp. 271-272.) (See *Freedman* v. *Maryland,* 380 U.S. 51, 59 [13 L.Ed.2d 649, 655, 85 S.Ct. 734].)

The petition of plaintiffs and respondents for a hearing by the Supreme Court was denied February 7, 1980. Newman, J., of the opinion that the petition should be granted.