**CHICO FEMINIST WOMEN'S HEALTH CENTER, a California non-profit corporation; Lorene Reed, for herself and as representative of the class of women similarly situated, Plaintiffs,**

v.

**BUTTE GLENN MEDICAL SOCIETY, an unincorporated association; Drs. Jerome Weinbaum, William Reed, Dennis Dalisky, Joseph Brooks, Homer Heath, Thomas Lorenz, Dale Ritter, and Stephen Cowdrey; Joanne Cowdrey; N.T. Enloe Memorial Hospital, a California non-profit corporation; and Norcal Mutual Insurance Company, a California corporation, Defendants.**

Civ. No. S-81-42 MLS.

United States District Court, E.D. California.

Feb. 23, 1983.

---

5. Or "independent counsel," as that function is now labeled under the amended Act.

Mark E. Merin, Cathleen A. Williams, Kanter, Williams, Merin & Dickstein, Sacra-

mento, Cal., Paul T. Persons, Chico, Cal., for plaintiffs.

David R. Harrison, Steven A. Lewis, Marsha L. Morrow, Michael P. McKisson, Long & Levit, San Francisco, Cal., for defendants Butte Glenn Medical Soc., Drs. Jerome Weinbaum, William Reed, Dennis Dalisky, Joseph Brooks, Homer Heath, Thomas Lorenz and Dale Ritter.

James B. Young, John F. McLean, Emmett C. Stanton, M. Robert Bragin, Pillsbury, Madison & Sutro, San Francisco, Cal., for defendant Norcal Mut. Ins. Co.

Charity Kenyon, John J. Hannegan, John S. Gilmore, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., for defendant N.T. Enloe Memorial Hosp., Inc.

Terry A. Appling, Greve, Clifford, Diepenbrock & Paras, Sacramento, Cal., Delbert M. Siemsen, Butte County Counsel, Oroville, Cal., Laurence L. Angelo, Bolling, Walter & Gawthrop, Sacramento, Cal., for defendant Joanne Cowdrey.

Carol Hunter, Deputy Atty. Gen., Sacramento, Cal., for defendant Stephen Cowdrey.

John Q. Brown, Weintraub, Genshlea, Hardy, Erich & Brown, Sacramento, Cal., Long & Levit, San Francisco, Cal., for defendant Dr. Dennis Dalisky.

## OPINION AND ORDER

MILTON L. SCHWARTZ, District Judge.

The Chico Feminist Women's Health Center ["Center"] is a non-profit clinic located in Chico, California, which offers a broad range of health services to women in Northern California, Southern Oregon and Western Nevada. Included among those services is the provision of elective vacuum aspiration abortions. Lorene Reed is a Butte County resident who sought and obtained an abortion at the Center.[1]

On January 22, 1981, the Center and Lorene Reed filed suit against the Butte Glenn Medical Society, Drs. Jerome Weinbaum, William Reed, Dennis Dalisky, Joseph Brooks, Homer Heath, Thomas Lorenz and Dale Ritter [hereafter collectively referred to as "BGMS"], Dr. Stephen Cowdrey, Joanne Cowdrey, N.T. Enloe Memorial Hospital ["Enloe Hospital"] and Norcal Mutual Insurance Company ["Norcal"].[2] The complaint alleges: (1) restraint of trade and monopolization in violation of the Sherman Act, 15 U.S.C. §§ 1 and 2; (2) violations of federal constitutional privacy, due process and equal protection rights, 42 U.S.C. §§ 1983, 1985(3), U.S. Const.amend. XIV, § 1; (3) violation of California's constitutional right of privacy, Cal. Const. art. I, § 1; (4) violation of Cal.Ins.Code § 679.71; and (5) interference with contract, employment relations and prospective economic advantage.

The gravamen of plaintiffs' complaint is that defendants conspired to "hinder, harass, interfere with[,] obstruct and force the closure of [the Center]." Complaint at ¶ 4. The specific contentions underlying the various claims for relief are that defendants refuse to work at the Center or provide back-up services for its patients; dissuaded physicians and nurse practitioners in Chico from working at the Center by threatening to deny them staff privileges at Enloe Hospital or otherwise interfere with their employment opportunities; waged a defamation campaign against the Center; initiated an investigation of the Center by the Board of Medical Quality Assurance solely for harassment purposes; and persuaded Norcal, the Center's professional liability insurer, to cancel the Center's insurance policy.

The complaint alleges that defendants' acts have forced the Center to increase its fees and to divert funds from patient care in order to combat defendants' allegedly defamatory accusations, obtain a new professional liability policy and pay the increased costs incurred as the result of being

---

1. The facts just set forth are taken from plaintiffs' complaint and are undisputed.

2. The Center filed this action on its own behalf and on behalf of women seeking abortions at the Center. Plaintiff Lorene Reed filed suit in her individual capacity and as a class representative for all women similarly situated.

forced to hire non-local physicians to work at the Center. It further charges that the refusal of local physicians to provide back-up services creates a "serious and unacceptable risk" to the Center's patients, who must receive such services on an emergency basis at Enloe Hospital, or in Oroville where the closest physician willing to offer such care is located. Finally, plaintiffs allege that defendants' acts have rendered the Center unable to meet its patients' demands for abortions.

In March 1981, defendants filed lengthy motions to stay, strike, dismiss and require a more definite statement of portions of plaintiffs' complaint. Among them were the motions of defendants Enloe Hospital, BGMS and Norcal to dismiss the third, fourth and fifth claims for relief—plaintiffs' federal and state constitutional civil rights claims.[3] The court heard oral argument on those particular motions on January 14, 1982 and then ordered the hearing continued until April 15, in order to afford plaintiffs additional time to conduct discovery on some of the issues discussed. The parties subsequently agreed to waive further oral argument and the motions to dismiss counts three, four and five were submitted for decision on April 28. The court now renders this opinion to resolve the issues raised by those motions.[4]

MOTIONS TO DISMISS COUNTS THREE AND FOUR: FEDERAL CIVIL RIGHTS CLAIMS

The third claim for relief is brought by the Center on its own behalf and on behalf of women seeking to obtain abortions at the Center. It is also pleaded as a class action, with plaintiff Reed designated as the class representative. The claim is founded on 42 U.S.C. §§ 1983 and 1985(3) and alleges that defendants' interference with the operations of the Center resulted in violations of plaintiffs' constitutional rights of privacy, due process and equal protection as guaranteed by the Fourteenth Amendment. U.S. Const.amend. XIV, § 1.

Defendants have moved to dismiss the third claim on the ground that defendants' alleged unconstitutional acts do not satisfy the "state action" requirements of 42 U.S.C. §§ 1983 and 1985(3) ["§ 1983" and "§ 1985(3)"]. The court has examined materials outside the pleadings in considering these motions and therefore, in accordance with Fed.R.Civ.P. 12(b), treats them as motions for summary judgment under Fed. R.Civ.P. 56.[5] "[S]ummary judgment is proper only when there is no genuine issue of any material fact or when viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law." *Gaines v. Haughton,* 645 F.2d 761, 769 (9th Cir.1981), *cert. denied,* 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982).[6]

The court turns first to plaintiffs' § 1983 claim. The statute provides that:

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes

---

3. All defendants have joined in those motions.

4. This court publishes its memorandum decisions only when it feels that they will aid others in considering novel or extremely difficult issues. The various other motions brought by defendants are addressed in a separate, unpublished opinion; the court does not feel that its discussion of those motions warrants publication.

5. In accordance with Fed.R.Civ.P. 12(b), the parties were granted an opportunity to submit relevant factual material on the state action issue. *See* Court Order, filed January 7, 1983.

6. Defendants have not challenged the standing of either the Center or named plaintiff Reed to

seek the relief prayed for in count three. Leaving aside the questions of whether Lorene Reed is a proper plaintiff, and whether the Center can sue for an invasion of its right of privacy, the court is satisfied that the Center has standing to proceed on behalf of those seeking to take advantage of its abortion services. *See Deerfield Medical Center v. City of Deerfield Beach,* 661 F.2d 328, 333 n. 9 (5th Cir. Unit B 1981), and cases cited therein. Consequently, Art. III does not bar the exercise of jurisdiction over count three. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).

to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

■ Thus, in order to maintain an action under § 1983, a plaintiff must establish: "(1) that defendant was acting 'under color of state law' at the time of the acts complained of, and (2) that defendant deprived plaintiff of [a] right, privilege, or immunity secured by the Constitution or Laws of the United States." *Freier v. New York Life Insurance Co.,* 679 F.2d 780, 783 (9th Cir.1982). The only defendant alleged to have acted under color of state law in the instant case is Enloe Hospital, a private institution. *See* Complaint at ¶¶ 13, 45. Its acts will be deemed under color of state law only if the state is significantly involved with the specific hospital activity that is the subject of plaintiffs' complaint.[7] *See Aasum v. Good Samaritan Hospital,* 542 F.2d 792, 794 (9th Cir.1976); *Taylor v. St. Vincent's Hospital,* 523 F.2d 75, 77–78 (9th Cir. 1975), *cert. denied,* 424 U.S. 948, 96 S.Ct. 1420, 47 L.Ed.2d 355 (1976); *Watkins v. Mercy Medical Center,* 520 F.2d 894, 896 (9th Cir.1975); *Ascherman v. Presbyterian Hospital of Pacific Medical Center, Inc.,* 507 F.2d 1103, 1105 (9th Cir.1974); *Chrisman v. Sisters of St. Joseph of Peace,* 506 F.2d 308, 312–13 (9th Cir.1974). And, if Enloe Hospital is found to have acted under color of state law and thus subjected itself to liability under § 1983, all of the other private defendants alleged to have acted in concert

with it are similarly subject to § 1983 liability. *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 186–87, 66 L.Ed.2d 185 (1980); *Goichman v. Rheuban Motors, Inc.,* 682 F.2d 1320, 1322 (9th Cir.1982).

■ The requisite degree of state involvement is obviously present if a rule or policy followed by a private entity is mandated or approved by the state. *See Bond v. Dentzer,* 494 F.2d 302 (2d Cir.), *cert. denied,* 419 U.S. 837, 95 S.Ct. 65, 42 L.Ed.2d 64 (1974); *Doe v. Bellin Memorial Hospital,* 479 F.2d 756 (9th Cir.1973); *Simkins v. Moses H. Cone Memorial Hospital,* 323 F.2d 959 (4th Cir.1963). It also exists when the state has "so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity . . . ." *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961).[8] Similarly, significant state involvement can be found where the private entity serves a traditionally sovereign function, *see Reitman v. Mulkey,* 387 U.S. 369, 87 S.Ct. 1627, 1636, 18 L.Ed.2d 830 (1967) (Douglas, J., concurring) (supervising urban housing); *Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) (determining voter eligibility), or enjoys a state-created monopoly which is related to the challenged acts of the private entity. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974). The standards guiding the state action inquiry are necessarily quite general in order to accommodate the infinite variety of fact situations that present themselves. "Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be

---

**7.** Plaintiffs' § 1983 claim is based on alleged deprivations of their Fourteenth Amendment rights. State involvement is therefore required not only by the "under color" language of § 1983, but also by the language of the Fourteenth Amendment. U.S. Const.amend. XIV, § 1. Because those two requirements are identical, *Lugar v. Edmondson Oil Co., Inc.,* —— U.S. ——, 102 S.Ct. 2744, 2750–53, 73 L.Ed.2d 482 (1982), the court need not engage in a separate inquiry regarding the "state action" requirement of the Fourteenth Amendment.

Consequently, this opinion uses the terms "under color of state law" and "state action" interchangeably.

**8.** Defendants' arguments notwithstanding, the continuing validity of the holding in *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961), is clearly established by the discussion of that case in *Rendell-Baker v. Kohn,* —— U.S. ——, 102 S.Ct. 2764, 2772, 73 L.Ed.2d 418 (1982).

attributed its true significance." *Burton,* 81 S.Ct. at 860.

Plaintiffs allege that the requisite state action in the instant case is established by: (a) [Enloe Hospital's] receipt of substantial federal funds; (b) its being the only hospital serving the Chico community with obstetrical facilities and facilities adequate for backup for the Health Center; (c) its being a successor to Butte County Hospital, the county operated facility closed in 1973; (d) its being a successor to Chico Neighborhood Health Center, a facility financed by federal, state and county funds which was closed in 1977; (e) and by virtue of expressed and implied agreements between and among itself, BGMS, local private physicians and the Butte County Board of Supervisors, that it would serve the health needs of the community including the low income families and individuals previously served by the County hospital and the Neighborhood Health Center. Complaint at ¶ 13. It is plaintiffs' position that these facts establish sufficient interdependence between Enloe Hospital and the state to transform the hospital's acts into state action. *Burton,* 81 S.Ct. at 862.

It is undisputed that Enloe Hospital receives substantial state funding. *See* Enloe Hospital's Responses to Plaintiffs' Interrogatories, filed March 26, 1982, No. 2.[9] Since no affidavits or documents have been offered to contradict plaintiffs' allegation that Enloe Hospital's obstetric facilities are the only ones in the Chico area sufficient to meet the Center's needs for emergency back-up services, the court will accept as true, for the purpose of these motions, plaintiffs' allegation that such is in fact the case. Complaint at ¶ 13. Under existing Ninth Circuit authority, however, those facts alone are not sufficient grounds for holding that Enloe Hospital acted under color of state law. *See Taylor,* 523 F.2d at 77–78 (sole hospital in the community with certain desired facilities does not act under color of state law, notwithstanding that it is also regulated by the state and receives state funding and tax exemptions).[10] Nor are they sufficient when considered in conjunction with plaintiffs' uncontroverted allegation that Enloe Hospital is a successor hospital to Butte County Hospital and the Chico Neighborhood Health Center, for the mere status of being a successor to a county operated or government funded institution is in no way indicative of state action.

The court turns, finally, to plaintiffs' allegation that Enloe Hospital provides indigent care previously offered by the Butte County Hospital and the Chico Neighborhood Health Center pursuant to agreements with the Butte County Board of Supervisors.[11] While such agreements are theoretically relevant in determining whether state action is present, Enloe Hospital has denied the existence of any such agreements. *See* Enloe Hospital's Responses to Plaintiffs' Interrogatories, No. 41. Enloe Hospital has clearly stated that it has never had a contract with Butte County to provide indigent care because the county refused to enter into such a contract when it closed its facilities in 1970. *Id.* And, although Enloe Hospital admits that prior to 1974 it sought reimbursement directly from the Butte

---

**9.** Although plaintiffs point to Enloe Hospital's receipt of *federal* funding, it is clearly its receipt of state funds that is the relevant inquiry. U.S. Const.amend. XIV, § 1; 42 U.S.C. § 1983.

**10.** The fact that the hospital in *Taylor v. St. Vincent's Hospital,* 523 F.2d 75, 78 (9th Cir. 1975), *cert. denied,* 424 U.S. 948, 96 S.Ct. 1420, 47 L.Ed.2d 355 (1976), was a religious hospital does not distinguish that situation. The *Taylor* court's refusal to hold that a "denominational hospital, which is the only hospital in the community with certain desired facilities, performs a public function" rested on the fact that there was no significant relationship between the

state and the acts which plaintiffs in that case sought to enjoin. *Id.* The same reasoning obtains in the instant case.

**11.** At least one district court has held that an agreement by a private hospital to provide medical assistance to indigents does not constitute state action. *See Jones v. Eastern Maine Medical Center,* 448 F.Supp. 1156, 1163–64 (D.Maine 1978). *See also Sokol v. University Hospital, Inc.,* 402 F.Supp. 1029, 1031 (D.Mass. 1975) (hospital which is under contract to perform services previously offered by Boston City Hospital does not act under color of state law).

County Board of Supervisors for indigent patients it had treated, that arrangement ceased before the Center opened in 1975. *Id.* *See also* Complaint at ¶ 15. Enloe Hospital states that at present it accepts county patients from Crippled Children Services, vocational rehabilitation and mental retardation programs, but avers that it is not obligated to do so. Enloe Hospital's Responses to Plaintiffs' Interrogatories, No. 41. Therefore, plaintiffs' theory that Enloe Hospital's agreements with Butte County regarding indigent care support a finding of state action disappears in the face of the uncontroverted fact that Enloe Hospital, at least since 1974, has labored under no such agreements.[12]

■ In sum, the only facts presented in support of plaintiffs' theory of state action are Enloe Hospital's receipt of state funds and its status as the only hospital in the Chico area with obstetrical facilities sufficient to provide needed back-up for the Center. Those facts, as noted previously, are insufficient to establish that Enloe Hospital acted under color of state law with respect to the conspiratorial acts charged here. *Taylor,* 523 F.2d at 77–78. Therefore, defendants' motions for summary judgment in their favor on plaintiffs' § 1983 claim should be granted.

Count three also alleges a violation of § 1985(3). That statute permits an individual to sue for damages:

[i]f two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . .

42 U.S.C. § 1985(3). State action is not a *statutory* requirement of a claim under § 1985(3); whether it is an element of a § 1985(3) cause of action depends upon the nature of the underlying rights which support the claim. *Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979); *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 1795–98, 29 L.Ed.2d 338 (1971). The rights underlying plaintiffs' § 1985(3) claim—privacy, due process and equal protection—are guaranteed by the Fourteenth Amendment, which does include a state action requirement. U.S. Const. amend. XIV, § 1. And, as pointed out above, that requirement is identical to the under color of law requirement of § 1983. Accordingly, plaintiffs' § 1985(3) claim, like their § 1983 claim, fails for lack of state action. The court need not, therefore, address defendants' alternative grounds for dismissal of the § 1985(3) claim.

Plaintiffs' fourth claim for relief, like the third, is brought on behalf of the Center and its patients, and as a class action. And, like the third claim, it alleges that the burden placed on women seeking abortions at the Center by defendants' actions constitutes an unconstitutional invasion of their Fourteenth Amendment right of privacy. This claim differs from the third in that it is narrower; it does not allege a conspiracy and deals only with privacy, not with equal protection or due process. More importantly, it is not a statutory cause of action but is grounded entirely on the Fourteenth Amendment.

■ Although the parties have not addressed this issue, it is the court's conclusion that count four fails to state a claim upon

---

**12.** It was not necessary for this court to determine the validity of the theory that a private institution which provides indigent care pursuant to an agreement with a county acts under color of state law. The court notes that the theory appears flawed if applied to establish state action as to hospital activities other than those falling within the scope of the agreement. As to those services contemplated by such an agreement, however, the theory would appear to have particular strength in California where the duty to care for indigents is delegated to counties by statute. Cal.Welf. & Inst.Code § 17000. Also of note is the fact that a county which has closed a health care facility since 1975 must make alternate arrangements to fulfill its duty to provide medical assistance to indigents and that any private institution which assumes that task by contract must "assume the county's full obligation to provide care to those who cannot afford it . . . ." Cal. Health & Safety Code § 1442.5.

which relief can be granted because a direct action under the Fourteenth Amendment is not permitted when, as in the instant case, statutes provide the remedy sought by the direct cause of action. *See Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980); *Ward v. Caulk,* 650 F.2d 1144, 1147–48 (9th Cir.1981). Accordingly, the court, on its own motion, will dismiss plaintiffs' fourth claim, on the ground that the facts of this case do not give rise to a direct cause of action under the Fourteenth Amendment.[13] Since the fourth claim will be dismissed pursuant to the court's own motion, the court will deny as moot the various motions to grant summary judgment or dismiss which were brought by Enloe Hospital, BGMS and Norcal.

## MOTIONS TO DISMISS COUNT FIVE: STATE PRIVACY CLAIM

 The fifth claim for relief, like the third and fourth, is brought by the Center and Lorene Reed, each individually and in a representative capacity. It alleges that defendants' interference with the Center's operation violates the right of privacy guaranteed to plaintiffs by Article I, § 1 of the California Constitution ["Article I, § 1"].[14] Defendants have moved to dismiss plain-

tiffs' Article I, § 1 claim for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Their specific contentions are: 1) that plaintiffs do not have standing to bring the claim; 2) that plaintiffs have failed to meet the state action requirement of Article I, § 1; and 3) that the facts alleged do not, as a matter of law, constitute interference with the right of privacy.[15, 16]

 Turning first to the question of standing, the court notes the basic principles of that doctrine under California law as described by the California Supreme Court:

'The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a . . . court, and not in [sic] the issues he wishes to have adjudicated.' A party enjoys standing to bring his complaint into court if his stake in the resolution of that complaint assumes the proportions necessary to ensure that he will vigorously present his case.

*Harman v. City and County of San Francisco,* 7 Cal.3d 150, 159, 101 Cal.Rptr. 880, 496 P.2d 1248 (1972) (citations omitted) (quoting *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968)). *See also Zee*

13. The court would ordinarily announce a tentative decision to dismiss, *sua sponte,* and then give the parties an opportunity to present opposition, where the tentative decision is based on grounds different than those asserted by the moving parties. *See Wong v. Bell,* 642 F.2d 359, 361–62 (9th Cir.1981). This procedure is unnecessary in this instance because the court would have ordered dismissal of count four for lack of state action even if it had not concluded that there is no direct action available here under the Fourteenth Amendment. Additionally, it is clear that the alleged privacy violations in the fourth claim are totally encompassed within count three. Consequently, the fourth claim adds nothing to the complaint that is not already presented in the third claim.

14. Article I, § 1, as amended in 1974, reads as follows: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

15. Inasmuch as plaintiffs' state privacy claim shares a "common nucleus of operative fact" with the federal antitrust claims set forth in counts one and two of the complaint, and can conveniently be tried together with the antitrust claims in one action, the court finds that it is properly alleged to be within the pendent claim jurisdiction of this court. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966).

16. The questions raised by these motions are to be determined by applying state law. *See United Mine Workers,* 86 S.Ct. at 1138; *Deerfield Hutterian Association v. Ipswich Board of Education,* 468 F.Supp. 1219, 1232 (D.S.D.1979). Questions of procedure, however, are governed by federal law. *See Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). The standing issue is addressed pursuant to Fed.R. Civ.P. 12(b)(1), the state action question under Fed.R.Civ.P. 56, *see* page 1194, *supra,* and the issue of whether the facts alleged constitute interference with the right of privacy under Fed.R.Civ.P. 12(b)(6).

*Toys, Inc. v. County of Los Angeles,* 85 Cal.App.3d 763, 780, 149 Cal.Rptr. 750 (1978). In the instant case, the standing analysis breaks down into three sub-issues: whether the Center has standing to sue on its own behalf for invasion of privacy; whether the Center has standing to assert the privacy rights of women seeking abortions at the Center; and whether plaintiff Reed has standing to represent the alleged plaintiff class. These questions will be addressed *seriatim.*

Plaintiffs contend that defendants' alleged interference with the Center's operation constitutes an invasion of the Center's own right of privacy. *See* Complaint at ¶ 50. The difficulty inherent in such a claim is not in the determination of whether the Center has standing to bring it; there can be no doubt that the Center, if it has a right of privacy, has standing to sue for a violation of that right. The problem arises from the serious threshold question of whether plaintiffs have pleaded a legally cognizable injury in contending that the Center's privacy has been invaded.

Plaintiffs argue that the Center's right of privacy can be characterized as its "interest in participating in the abortion decisions of its patients." Plaintiffs' Opposition to Defendants' Motions to Dismiss, filed May 1, 1981 at 42(a). Plaintiffs have not cited, and the court has been unable to discover, any California authority either expressly or impliedly recognizing such a privacy right.[17] While the silence of the California courts on this issue is not dispositive, *see Southern Pacific Transportation Co. v. United States,* 462 F.Supp. 1227, 1238 (E.D. Cal.1978), in this particular case the court finds it to be significant.

In *Committee to Defend Reproductive Rights v. Myers,* 29 Cal.3d 252, 262, 172 Cal.Rptr. 866, 625 P.2d 779 (1981), the California Supreme Court recognized the personal right of a pregnant woman to choose whether to seek an abortion or bear a child—the right of procreative choice—as a privacy right protected under Article I, § 1. The Court described the right as "clearly among the most intimate and fundamental of all constitutional rights" and as "central

**17.** Although *People v. Barksdale,* 8 Cal.3d 320, 333, 105 Cal.Rptr. 1, 503 P.2d 257 (1972), and *Ballard v. Anderson,* 4 Cal.3d 873, 877, 95 Cal. Rptr. 1, 484 P.2d 1345 (1971), refer to an arguably analogous right—that of physicians to perform abortions—those cases do not establish that right as a privacy right. Rather, the significance of the physicians' rights to perform abortions as discussed in *Barksdale* and *Ballard* is that those rights were of sufficient importance to confer standing upon the plaintiff physicians therein to assert the individual privacy rights of their patients.

The court notes that plaintiffs have cited three federal circuit court decisions in support of their theory that the Center has a constitutional privacy right to "advise and perform abortions." *Nyberg v. City of Virginia,* 495 F.2d 1342, 1344 (8th Cir.), *appeal dismissed, cert. denied,* 419 U.S. 891, 95 S.Ct. 169, 42 L.Ed.2d 136 (1974). *See also Roe v. Ferguson,* 515 F.2d 279, 281 (6th Cir.1975). *Friendship Medical Center Ltd. v. Chicago Board of Health,* 505 F.2d 1141, 1145 (7th Cir.1974), *cert. denied,* 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975). These decisions interpret the federal constitutional right of privacy and are therefore not binding on this court in interpreting California's privacy right. More importantly, any persuasive value the cited cases may have had has been eliminated by the United

States Supreme Court's discussion of the "physician's right to administer medical care" in *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 879 n. 33, 51 L.Ed.2d 64 (1977), wherein Justice Stevens wrote:

The doctors rely on two references to a physician's right to administer medical care in the opinion in *Doe v. Bolton,* 410 U.S. [179], at 197–198, and 199, 93 S.Ct. [739] at 750 and 751, 35 L.Ed.2d 201. Nothing in that case suggests that a doctor's right to administer medical care has any greater strength than his patient's right to receive such care. The constitutional right vindicated in *Doe* was the right of a pregnant woman to decide whether or not to bear a child without unwarranted state interference. The statutory restrictions on the abortion procedures were invalid because they encumbered the woman's exercise of that constitutionally protected right by placing obstacles in the path of the doctor upon whom she was entitled to rely for advice in connection with her decision. If those obstacles had not impacted upon the woman's freedom to make a constitutionally protected decision, if they had merely made the physician's work more laborious or less independent without any impact on the patient, they would not have violated the Constitution.

to a woman's control not only of her own body, but also to the control of her social role and personal destiny." *Myers,* 29 Cal.3d at 275, 172 Cal.Rptr. 866, 625 P.2d 779. Given that characterization, the court is hard pressed to find a logical basis for holding an organization's right to advise and perform abortions to be a privacy right. And there is no analogy to be drawn between a person's highly personal right of procreative choice and a clinic's right to perform abortions. Finally, it is the court's opinion that the Center's purported privacy right is nothing more than its right to carry on a lawful profession or business, a right which is amply protected by the California Constitution's due process clause, *see e.g., Perrine v. Municipal Court for the East Los Angeles Judicial District of Los Angeles County,* 5 Cal.3d 656, 663, 97 Cal.Rptr. 320, 488 P.2d 648 (1971); *Skaggs v. City of Oakland,* 6 Cal.2d 222, 224, 57 P.2d 478 (1936); Cal. Const. art. I, § 7, and California's common law right of fair procedure. *See, e.g., Miller v. Eisenhower Medical Center,* 27 Cal.3d 614, 626–27, 166 Cal.Rptr. 826, 614 P.2d 258 (1980). The court concludes, therefore, that the Center lacks standing to sue for an invasion of its privacy under Article I, § 1.

The court considers next whether the Center has standing to bring suit under Article I, § 1 on behalf of the women seeking abortions at the Center. Defendants contend that the right of privacy is personal and thus, that only individual patients can sue for invasion of that right. *County of Kern v. Superior Court of Kern County,* 82 Cal.App.3d 396, 401, 147 Cal.Rptr. 248 (1978). The argument misses the mark. The fact that the right of privacy is personal means only that the Center cannot seek damages on its own behalf for the infringement of its patients' privacy rights. That is not, however, what the Center seeks in the instant case; rather, it is requesting that it be granted *jus tertii* standing to act in a representative capacity on behalf of its pa-

tients, asserting *their* rights and seeking relief on *their* behalf.

■■■■■ California law explicitly holds that physicians have standing to sue on behalf of their patients when the privacy right to choose whether or not to have an abortion is at issue. *See People v. Barksdale,* 8 Cal.3d 320, 333, 105 Cal.Rptr. 1, 503 P.2d 257 (1972); *People v. Belous,* 71 Cal.2d 954, 963 n. 5, 80 Cal.Rptr. 354, 458 P.2d 194. The related question of whether a women's health clinic has such standing has not been explicitly addressed in California. The decision in *Myers,* 29 Cal.3d 252, 172 Cal.Rptr. 866, 625 P.2d 779, however, seems to provide implicit support for the proposition that interested organizations have standing to sue on behalf of women seeking to vindicate privacy rights.[18] And, the Center clearly has sufficient stake in the outcome of this litigation "to ensure that [it] will vigorously present [its] case." *Harman,* 7 Cal.3d at 159, 101 Cal.Rptr. 880, 496 P.2d 1248. The court concludes, therefore, that the Center has standing to sue for invasion of Article I, § 1 privacy rights on behalf of the women seeking abortions at the Center.[19]

■■■ The final standing inquiry is addressed to whether named plaintiff Lorene Reed can properly represent the purported plaintiff class. "The cases uniformly hold that a plaintiff seeking to maintain a class action must be a member of the class he claims to represent." *La Sala v. American Savings & Loan Association,* 5 Cal.3d 864, 875, 97 Cal.Rptr. 849, 489 P.2d 1113 (1971) (footnote omitted). *See also Chern v. Bank of America,* 15 Cal.3d 866, 874, 127 Cal.Rptr. 110, 544 P.2d 1310 (1976). The fifth claim for relief is brought on behalf of Reed "as well as on behalf of all women similarly situated whose decisions to obtain abortions were similarly burdened," Complaint at ¶¶ 10, 50, and actual damages, as well as declaratory and injunctive relief, are sought on behalf of the class members. Complaint at page 19.

18. The federal circuit courts which have addressed this question in connection with the federal privacy right have uniformly held that providers of abortion services have standing to sue on behalf of their patients. *See Deerfield Medical Center v. City of Deerfield Beach,* 661 F.2d 328, 333 n. 9 (5th Cir. Unit B 1981), and cases cited therein.

19. The court expresses no opinion on the related issue of whether the Center has standing to seek money damages on behalf of those women.

At the time this action was filed, plaintiff Reed had already sought and obtained an abortion at the Center. Complaint at ¶ 10. While that does not affect her ability to sue for damages, it is clear that her claims for declaratory and injunctive relief were moot at the outset. *See Guardianship of Baby Boy M.,* 66 Cal. App.3d 254, 276, 135 Cal.Rptr. 866 (1977); *Wilson v. Los Angeles County Civil Service Commission,* 112 Cal.App.2d 450, 452–53, 246 P.2d 688 (1952). Lorene Reed is therefore not a proper class representative of the class she seeks to represent. Accordingly, plaintiffs will be granted 60 days from the date this order is filed within which to amend their complaint to name a proper class representative. *See Scott v. City of Indian Wells,* 6 Cal.3d 541, 550, 99 Cal.Rptr. 745, 492 P.2d 1137 (1972); *La Sala,* 5 Cal.3d at 876, 97 Cal.Rptr. 849, 489 P.2d 1113. Failure to do so will result in a dismissal of the class action allegations.[20]

Having concluded that the Center can properly proceed with a state privacy claim on behalf of women seeking abortions at the Center, the court turns next to defendants' argument that they are entitled to summary judgment on plaintiffs' state privacy claim because plaintiffs have failed to satisfy the state action requirement of Article I, § 1. Implicit in that argument is the assumption that state action is, in fact, a required element of a claim brought under Article I, § 1. If the court were to accept that assumption, it would order plaintiffs' Article I, § 1 claim dismissed, for the record is insufficient to establish that the alleged unconstitutional acts of defendants constitute state action. *See Garfinkle v. Superior Court of Contra Costa County,* 21 Cal.3d 268, 277–81, 146 Cal.Rptr. 208, 578

P.2d 925 (1978); *Payton v. Weaver,* 131 Cal.App.3d 38, 47, 182 Cal.Rptr. 225 (1982). *Compare Gay Law Students Association v. Pacific Telephone & Telegraph Co.,* 24 Cal.3d 458, 468–74, 156 Cal.Rptr. 14, 595 P.2d 592 (1979); *Crawford v. Board of Education of the City of Los Angeles,* 17 Cal.3d 280, 294, 130 Cal.Rptr. 724, 551 P.2d 28 (1976). It thus becomes crucial to determine whether defendants are subject to liability under Article I, § 1 as private entities and individuals.

In November 1972, California amended its constitution to include among the inalienable rights protected by Article I, § 1 a right of privacy.[21]

'The right of privacy is the right to be left alone. It is a fundamental and compelling interest. It protects our homes, our families, our thoughts, our emotions, our expressions, our personalities, our freedom of communion and our freedom to associate with the people we choose.'

*White v. Davis,* 13 Cal.3d 757, 774, 120 Cal.Rptr. 94, 533 P.2d 222 (1975) (quoting Cal. Ballot Pamphlet (1972)).[22] While the "moving force" behind the enactment of the privacy amendment was a perceived need to afford greater protection against increasingly intrusive surveillance and data collection by government and business, the privacy right was nonetheless clearly intended to encompass "an enormously broad and diverse field of personal action and belief...." *White,* 13 Cal.3d at 774, 120 Cal.Rptr. 94, 533 P.2d 222. When writing the *White v. Davis* opinion in 1975, Justice Tobriner noted that "the full contours of the new constitutional provision have as yet not even tentatively been sketched...." *Id.* at 773, 120 Cal.Rptr. 94, 533 P.2d 222. Approximately seven years have passed

20. At the January 14, 1982 hearing in this matter, plaintiffs indicated that they would probably decide not to litigate this matter as a class action but would instead rely on the Center's standing to bring the rights of its patients before the court. Having received no definite indication that plaintiffs have decided to abandon the class action aspect of this lawsuit as of yet, the court will assume that plaintiffs' class action allegations remain a part of their fifth cause of action until notified otherwise.

21. See footnote 14, *supra* at page 1198 for the text of the amendment.

22. Election brochure arguments are properly considered as legislative history in construing constitutional amendments adopted by popular vote. *White v. Davis,* 13 Cal.3d 757, 775 n. 11, 120 Cal.Rptr. 94, 533 P.2d 222 (1975).

since that statement was written. While the scope of the privacy right has still to be precisely defined, certain questions about the extent of the protection it affords have been answered.

First, it is now clearly established that the right of privacy guaranteed by Article I, § 1 encompasses a woman's right to choose between childbirth and abortion. *Myers,* 29 Cal.3d at 262, 172 Cal.Rptr. 866, 625 P.2d 779. It is also clear that Article I, § 1 protects that right against undue *governmental* interference. *Id.* at 284, 172 Cal.Rptr. 866, 625 P.2d 779. What remains unclear, however, is whether the right of procreative choice is protected against interference by private parties as well. Defendants argue that it is not. More specifically, defendant BGMS contends that:

[t]he state constitutional right of privacy exists on two levels. First, it guarantees an individual's right to make personal intimate decisions concerning such matters as marriage, family and sex, *free from governmental intrusion.* Second, it protects the right of a person to avoid unwarranted disclosure of private facts made available because of increased surveillance and data collection activity....

[S]tate action is required to establish a violation of the first level of privacy rights (upon which the freedom to choose to have an abortion is based) even though state action is not necessary to establish a violation of 'second level' privacy rights.

Defendant BGMS Motion to Dismiss, filed March 30, 1981 at 22 (emphasis in original) (citation omitted).

In support of their theory that the right to an abortion is protected only against undue state interference, defendants rely on a quote from the *Myers* opinion stating that "the decision whether to bear a child or to have an abortion is so private and so intimate that each woman in this state—rich or poor—is guaranteed the constitutional right to make the decision as an individual, uncoerced *by governmental intrusion* (emphasis added)." *Myers,* 29 Cal.3d at 284, 172 Cal.Rptr. 866, 625 P.2d

779. The court does not find that statement to constitute conclusive or even persuasive authority in support of defendants' position. In *Myers,* the only issue before the California Supreme Court was whether state Budget Acts which severely limited Medi-Cal funding for abortions violated Article I, § 1; there was thus no need to determine whether interference with the right to procreative choice by non-governmental entities is actionable under Article I, § 1. The same analysis obtains as to the several other California decisions treating abortion issues, i.e., none has had to go beyond questions involving the constitutionality of various state regulations. *See Barksdale,* 8 Cal.3d 320, 105 Cal.Rptr. 1, 503 P.2d 257 (constitutionality of the 1967 Therapeutic Abortion Act); *Ballard v. Anderson,* 4 Cal.3d 873, 95 Cal.Rptr. 1, 484 P.2d 1345 (validity of Cal.Civ.Code § 34.5 which permits minors to obtain abortions without parental consent); *Belous,* 71 Cal.2d 954, 80 Cal.Rptr. 354, 458 P.2d 194 (constitutionality of former Cal.Penal Code § 274, which made performance of elective abortions criminal). The court concludes that the language quoted from *Myers* was not intended to limit actions under Article I, § 1 to claims involving state interference with the right of procreative choice, but rather, was descriptive of the particular form of interference present in that case. Moreover, having carefully examined the background and subsequent development of the privacy right guaranteed by Article I, § 1, the court further concludes that the right of procreative choice is protected against private interference.

Although defendants would divide the right of privacy into two distinct areas of protected rights—one protected against infringement by private parties, and the other devoid of such protection—there is simply no indication that certain privacy rights were intended to be afforded greater protection than others. An examination of existing case law indicates that private defendants, be they organizations or individuals, have been consistently held subject to liability under Article I, § 1 irrespective of their status as private parties. Thus, the

wrongful disclosure of personal information has been held to subject private defendants to liability for violating Article I, § 1. *See Kinsey v. Macur,* 107 Cal.App.3d 265, 272, 165 Cal.Rptr. 608 (1980) (allegation that private individual disclosed embarrassing personal facts about the plaintiff states a cause of action under Article I, § 1 for invasion of privacy); *Porten v. University of San Francisco,* 64 Cal.App.3d 825, 829, 134 Cal. Rptr. 839 (1976) (suit against private university for unauthorized disclosure of plaintiff student's transcript states a claim for invasion of privacy under Article I, § 1). California courts have also indicated that private parties who conduct "unreasonably intrusive" investigations are subject to liability for invading privacy rights. *See Solis v. Southern California Rapid Transit District,* 105 Cal.App.3d 382, 391–93, 164 Cal. Rptr. 343 (1980) (bus company investigators who visited an accident victim in her hospital room did not act unreasonably and therefore did not violate patient's right of privacy); *Cain v. State Farm Mutual Automobile Insurance Co.,* 62 Cal.App.3d 310, 313, 132 Cal.Rptr. 860 (1976) (dictum suggesting that an insurance company violates Article I, § 1 by engaging in an "unreasonably intrusive" investigation of a claim). And finally, in a decision involving an alleged invasion of privacy completely outside the realm of information gathering or disclosure, a private association of workers was held subject to liability under Article I, § 1 for intruding upon a homeowner's privacy right "to a sanctuary reasonably secure from outside intrusion...." *Annenberg v. Southern California District Council of Laborers and Its Affiliated Local 1184,* 38 Cal.App.3d 637, 645, 113 Cal.Rptr. 519 (1974).

The court finds no reasonable basis to conclude that the right to an abortion under California law is afforded less protection than the privacy rights at issue in the above-cited cases. While the court acknowledges it may seem novel to subject private entities and individuals to liability for interfering with a woman's right to an abortion, it notes that elevation of the right of privacy to constitutional status was intended to "extend various court decisions on privacy to insure protection of our basic rights," Cal. Ballot Pamphlet at 28 (1972), and that the right of procreative choice protected by Article I, § 1 has already been established as significantly broader than the comparable federal right. *Myers,* 29 Cal.3d at 280–81, 172 Cal.Rptr. 866, 625 P.2d 779. In sum, the court finds that California law supports the conclusion that Article I, § 1 was intended to provide sweeping protection against interference with all personal privacy rights and that such protection was meant to include protection against the acts of private parties.[23]

In their final attack on plaintiffs' state privacy claim, defendants have moved for dismissal on the ground it fails as a matter of law to allege facts sufficient to constitute an invasion of privacy. According to defendants, the alleged privacy invasion is nothing more than "some incremental increase in cost and some diminished availability of abortion services," Norcal Motion to Dismiss, filed March 31, 1981 at 21, which, in defendants' eyes, is a constitutionally insignificant burden on the abortion right because it does not "severely impair or totally deny" the right of procreative choice, as did the Budget Acts at issue in *Myers,* 29 Cal.3d at 276, 172 Cal.Rptr. 866, 625 P.2d 779.

---

**23.** It is by no means unprecedented for California law to protect fundamental rights against private interference. For example, the California common law right of fair procedure prohibits private organizations from expelling or excluding an individual from membership without affording at least minimal due process protection when such individual's right to engage in his or her chosen profession is substantially affected. *See, e.g., Pinsker v. Pacific Coast Society of Orthodontists,* 12 Cal.3d 541, 116 Cal.Rptr. 245, 526 P.2d 253 (1974); *Ascherman v. St. Francis Memorial Hospital,* 45 Cal.App.3d 507, 119 Cal.Rptr. 507 (1975). *See also Robins v. Pruneyard Shopping Center,* 23 Cal.3d 899, 910, 153 Cal.Rptr. 854, 592 P.2d 341 (1979) ("sections 2 and 3 of article I of the California Constitution protect speech and petitioning, reasonably exercised, in shopping centers even when the centers are privately owned").

The court disagrees. The California Supreme Court did indeed find that the Budget Acts challenged in *Myers* would "severely impair or totally deny" the right of procreative choice for a great number of women in California. It did not, however, establish that degree of impairment as a requisite element of all abortion rights claims. Instead, *Myers* indicated that the determination of whether certain activities violate Article I, § 1 must be made on a case by case basis after weighing the competing interests to decide whether the utility of the alleged infringement " 'manifestly outweighs' the resulting impairment of constitutional rights." *Myers,* 29 Cal.3d at 274, 172 Cal.Rptr. 866, 625 P.2d 779. *See also Ballard,* 4 Cal.3d at 880–81, 95 Cal.Rptr. 1, 484 P.2d 1345; *Belous,* 71 Cal.2d at 964, 80 Cal.Rptr. 354, 458 P.2d 194.

In the instant case, plaintiffs allege, *inter alia,* that defendants have prevented the Center from being able to fulfill the demand for abortions at the Center. Complaint at ¶¶ 3, 23(b). They also allege that the Center is the only place in Chico which offers "elective vacuum aspiration abortions as a service to the community." *Id.* at ¶ 21. Those allegations, which the court accepts as true for the purpose of these motions, *see Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), support the inference that some of the women seeking abortions in Chico are unable to obtain them, either at the Center or elsewhere in the Chico area. At this point, it is not clear how far away from Chico a woman would be required to travel to obtain an elective vacuum aspiration abortion. And, it may be the case that some women are unable to obtain abortions anywhere as a result of defendants' alleged unconstitutional acts. Given the highly personal nature of the abortion right, it is this court's opinion that there has been a substantial invasion of privacy if even one woman seeking an abortion at the Center has been unable to procure an abortion as the result of defendants' alleged acts. In determining whether such an infringement of the privacy right violates Article I, § 1, the court must balance the severity of the harm caused thereby against defendants' asserted justification, be it societal or individual, for causing the infringement. Plaintiffs allege that there is no justification for the alleged privacy intrusion at issue in this action. If that is proven true, the denial of even one woman's right of procreative choice would be a violation of Article I, § 1. Accordingly, the court concludes that plaintiffs have alleged facts sufficient to state a claim for invasion of privacy.[24]

## CONCLUSION

In accordance with the foregoing, IT IS ORDERED:

1) That defendants' motions for summary judgment in their favor on count three are GRANTED;

2) That count four is DISMISSED WITH PREJUDICE, on the court's own motion, for failure to state a claim upon which relief can be granted;

3) That defendants' motions for summary judgment in their favor on count four are DENIED as moot; and

---

**24.** The court is mindful that "[j]udges are untrained and courts ill-equipped for hospital administration, and [that] it is neither possible nor desirable for the courts to act as supervening boards of directors for every nonprofit hospital corporation in the state." *Lewin v. St. Joseph Hospital of Orange,* 82 Cal.App.3d 368, 385, 146 Cal.Rptr. 892 (1978). The court, however, does not view its decision to permit plaintiffs to maintain their state privacy claim against private defendants as being in conflict with that policy. There is no allegation that defendants' acts were in any way connected to hospital administration.

The court also notes that the decision herein is in no way intended to suggest that an individual woman has a privacy right to order a private physician to perform an abortion on demand. Such would clearly be contrary to existing authority. *See, e.g., Payton v. Weaver,* 131 Cal.App.3d 38, 46–47, 182 Cal.Rptr. 225 (1982); *Agnew v. Parks,* 172 Cal.App.2d 756, 764, 343 P.2d 118 (1959). However, the court does find that private individuals or entities who act indirectly to interfere with women's rights to obtain abortions elsewhere should be subject to liability under Article I, § 1 and called upon to justify their actions.

4) That defendants' motions for dismissal and summary judgment in their favor on count five are DENIED.